# United States Court of Appeals
## For the First Circuit

No. 04-1060

SANTA RODRIGUEZ DE RIVERA,

Petitioner,

v.

JOHN ASHCROFT, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,
Stahl, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Robert M. Warren</u> for petitioner.

<u>Anthony P. Nicastro</u>, with whom <u>Peter D. Keisler</u>, Assistant
Attorney General, Civil Division, <u>Barry J. Pettinato</u>, Senior
Litigation Counsel, and <u>Anthony C. Payne</u>, Attorney, Office of
Immigration Litigation, Civil Division, United States Department of
Justice, were on brief, for respondent.

January 5, 2005

**LYNCH**, **Circuit Judge**.  This immigration case presents legal issues overlapping with those resolved by Succar v. Ashcroft, No. 03-2445, released this same day.  The petitioner is the wife of an American citizen and is also an arriving alien who was paroled and then placed in removal proceedings.  Pursuant to a regulation, 8 C.F.R. § 1245.1(c)(8), saying arriving aliens in removal proceedings could not apply for adjustment of status, she was denied an opportunity (in her case, a second opportunity) to apply for adjustment of status.

Succar held 8 C.F.R. § 1245.1(c)(8)[1] to be invalid as inconsistent with the relevant statute, 8 U.S.C. § 1255, to the extent that the regulation barred paroled aliens in removal proceedings from applying for adjustment of status.  Succar held that the Attorney General's discretion as to whether to grant adjustment of status did not include the power to redefine eligibility to apply for adjustment of status for paroled aliens who were statutorily granted eligibility pursuant to 8 U.S.C. § 1255(a).  We now remand this case to the Board of Immigration Appeals (BIA) for consideration in light of our holding in Succar.

---

[1]8 C.F.R. § 1245.1(c)(8) is identical to 8 C.F.R. § 245.1(c)(8), which is the provision cited in the parties' briefs. § 245.1(c)(8) applies to the immigration agencies in the Department of Homeland Security.  § 1245.1(c)(8) applies to the Executive Office for Immigration Review in the Department of Justice, which includes the Immigration Judge and the Board of Immigration Appeals.

**I.**

Santa Rodriguez de Rivera, a native and citizen of the Dominican Republic, entered the United States without inspection in 1990 and lived here illegally. She married a United States citizen in 1993 and first applied for adjustment of status, with the Immigration and Naturalization Services's (INS)[2] District Director, on September 26, 1996, after her husband had filed an I-130 Petition for Alien Relative that had been approved by the INS. Rivera was eligible to apply for adjustment of status under 8 U.S.C. § 1255(i) (the Life Act amendments).

While the decision on her 1996 application for adjustment of status was pending, Rivera left the United States to travel to the Dominican Republic. She claims that she was granted advance parole by the INS before leaving, but the government denies this; she has, at any rate, not produced evidence of the advance parole.[3]

_____

[2]In March 2003, the relevant functions of the INS were transferred to the Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement. We refer to the immigration agency throughout as the INS. Mukamusoni v. Ashcroft, 390 F.3d 110, 113 n.1 (1st Cir. 2004).

[3]Advance parole is pre-authorization to enter the country. See 8 C.F.R. § 212.5(f). It can be granted, as here, to an alien who is currently in the United States, but who wants assurance that, when she leaves the country, she will be able to return. Samirah v. O'Connell, 335 F.3d 545, 548 (7th Cir. 2003).
    At oral argument, Rivera produced an INS processing sheet written up before she left the country (dated January 2, 1997), during an interview dealing with her first adjustment of status application. This sheet had a notation stating: "I-512 -- warned." I-512 is the advance parole form. 8 C.F.R. § 212.5(f). In response to a request from this court, the government produced a

-3-

Rivera returned to the United States on January 17, 1998, via New York City, and was paroled at that time for deferred inspection in Boston on February 26, 1998. Rivera reported for inspection in Boston on February 26 and on March 12, 1998, but no inspector was available on either date. Finally, she was inspected and paroled on April 10, 1998. Her parole at that time had an indefinite expiration and was for the purposes of pursuing her initial adjustment of status application.

Her first adjustment of status application -- the one filed prior to her departure and reentry -- was denied on October 23, 2000. The INS District Director cited "lack of prosecution (abandonment)" as the reason, elaborating that two forms had been sent to Rivera after her adjustment interview and that she had not responded to these forms with "extensive, material documentation." Incomplete responses were sent on the first form, and nothing at all on the second. Nonetheless, the notice denying her application concluded that "[Rivera] may renew [her] application for status as a permanent resident in any deportation proceeding."

On the same date as the issuance of the denial of her adjustment of status application, the INS sent Rivera a Notice to

sworn affidavit from the interviewer who wrote the notation. He stated that the notation merely reflected his standard practice of warning Rivera that she could not leave the country while her adjustment of status application was pending without receiving advance parole and that there was no evidence in the administrative file that Rivera ever asked for or received advance parole.

Appear ordering her to appear at removal proceedings in front of an Immigration Judge (IJ) in Boston. The Notice charged her as subject to removal. It said nothing about her parole status.

In removal proceedings before the IJ, Rivera moved to terminate, administratively close, or continue the removal proceedings so that she could again apply for adjustment of status before the District Director. She also sought to have the IJ hear her adjustment application during the course of the removal proceedings. All of these motions were denied by the IJ in his oral decision of June 18, 2002. The IJ noted that she "has no jurisdiction to hear the adjustment case" because Rivera "is an arriving alien." 8 C.F.R. § 1245.1(c)(8). The IJ also refused to terminate the case, given that the INS opposed the motion. Rivera also contested removability, but the IJ found that removability was proven by clear and convincing evidence and ordered Rivera removed to the Dominican Republic. The IJ concluded that Rivera would have to apply for a permanent resident visa from abroad rather than adjust her status from inside the United States.[4]

Rivera filed a timely appeal with the BIA on July 11, 2002. The BIA affirmed all rulings. The BIA held that the IJ

_____

[4]Rivera points out that if she were forced to leave the country and apply for a permanent resident visa from abroad, she would be barred from reentering the United States for ten years because she had accrued more than one year of unlawful presence in the United States. 8 U.S.C. § 1182(a)(9)(B)(i). Waiver of this bar is in the absolute discretion of the Attorney General. 8 U.S.C. § 1182(a)(9)(B)(v).

correctly determined that Rivera was an arriving alien and that by regulation, arriving aliens in removal proceedings are ineligible to apply for adjustment of status anywhere. The BIA cited 8 C.F.R. § 1245.1(c)(8), the exact regulation invalidated by this court in Succar. The BIA also noted that the "narrow exception" from § 1245.1(c)(8) for some arriving aliens who received advance parole was inapplicable because Rivera "has not offered any evidence" that she received advance parole before leaving the United States and traveling to the Dominican Republic. Finally, the BIA noted that the IJ correctly refused to terminate or administratively close the removal proceedings because "once the [agency] has initiated removal proceedings, neither we nor the [IJ] has the authority to terminate proceedings unless the [agency] fails to establish that the alien is removable as charged."[5]

Rivera timely appealed the BIA's decision to this court. She does not contest removability, but only appeals the BIA's determination that the IJ could not hear Rivera's application for

---

[5]The BIA also cited In re Castro-Padron, 21 I&N Dec. 379, 380 (BIA 1996), for the proposition that "[t]he [agency] may review and act on [Rivera's] application for adjustment of status independently." We are puzzled by this statement, which amounts to a misunderstanding of the relevant regulations and was misleading to Rivera. As we explained in Succar, under 8 C.F.R. § 1245.1(c)(8), once an arriving alien had been placed in removal proceedings, neither the IJ nor the district director of the immigration agency could act on any application for adjustment of status; the alien thus had no venue in which to apply for adjustment in the United States. In re Castro-Padron was a 1996 case; 8 C.F.R. § 1245.1(c)(8) was promulgated in 1997.

adjustment of status and that the IJ could not have terminated, administratively closed, or continued the removal proceedings so that Rivera could file her application for adjustment of status with the District Director.

## II.

The IJ and BIA both denied Rivera's motions to hear the adjustment application within the removal proceeding, or in the alternative, to terminate, administratively close, or continue the removal hearing so that adjustment could be pursued in some other forum, on the sole basis of 8 C.F.R. § 1245.1(c)(8), the regulation preventing an "arriving alien" in removal proceedings from applying for adjustment of status. In addition, the government's brief to this court focused only on the validity of the regulation.

Since the agency action, under Succar, cannot be sustained on the stated grounds, the appropriate remedy is to remand to the BIA for further proceedings consistent with the holding in Succar. We do not address any other issues. See INS v. Ventura, 537 U.S. 12, 16-17 (2002) (per curiam); SEC v. Chenery Corp., 318 U.S. 80, 95 (1943) (remanding case to agency for further consideration after determining that "the grounds upon which the agency acted in exercising its powers were not those upon which its action can be sustained").

We do not, for example, address the issue of whether Rivera's application for adjustment of status is somehow number-

-7-

barred because she already filed one earlier application, which was denied.  None of the IJ, the BIA, or the government in its brief to this court have suggested that any such number bar exists.  Indeed, the District Director's notice of denial to Rivera indicated that the agency is normally willing to accept a second application for adjustment of status in the course of removal proceedings, absent the effect of 8 C.F.R. § 1245.1(c)(8).[6]

Similarly, we do not address Rivera's arguments aimed at finding a way around 8 C.F.R. § 1245.1(c)(8).  She argues that she is not an "arriving alien" for purposes of that regulation because of the type of parole she received, and she argues that adjustment of status under 8 U.S.C. § 1255(i) (as opposed to adjustment under 8 U.S.C. § 1255(a)) is not barred by the regulation.

We **<u>vacate</u>** the removal order and **<u>remand</u>** the case to the BIA for further proceedings consistent with <u>Succar</u> v. <u>Ashcroft</u>, No. 03-2445, released this same day.  So ordered.

---

[6]Similarly, there has been no holding from the IJ or BIA or argument from the government that Rivera is ineligible under the statutory requirements to apply for adjustment of status under both of the two possible routes, 8 U.S.C. § 1255(a) and 8 U.S.C. § 1255(i).