# United States Court of Appeals
## For the First Circuit

No. 04-1473

RAMIRO FERNANDES PEREIRA,

Petitioner, Appellant,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,* ET AL.,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Campbell and Cyr, Senior Circuit Judges.

Randy Olen for petitioner.
Robin E. Feder, Assistant United States Attorney, with whom
Robert Clark Corrente, United States Attorney, was on brief, for
respondents.

July 21, 2005

*Alberto Gonzales was sworn in as Attorney General of the United
States on February 3, 2005.  We have substituted him for John
Ashcroft, previous holder of that office, as the respondent. See
Fed. R. App. P. 43(c)(2).

**CAMPBELL**, <u>Senior Circuit Judge</u>.  Under former section 212(c) of the Immigration and Nationality Act ("INA"), the Attorney General had authority to grant a discretionary waiver of deportation to aliens who have accrued seven years of lawful permanent residence in the United States.  INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996).  The statute, however, barred application of the waiver provision to "an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years."  <u>Id.</u>  This case presents the question whether an alien aggravated felon, serving a state prison sentence of twelve or more years, whose application for a section 212(c) waiver was delayed for several years by an erroneous agency legal interpretation so that he had served more than five years of his felony sentence by the time he could proceed with the waiver application, is now barred by law from seeking a waiver.

## I.  Background

The facts are not in dispute.  Petitioner Ramiro Fernandes Pereira ("Pereira"), who is a citizen of Portugal, was admitted to the United States on March 8, 1969 as a lawful permanent resident.  On July 14, 1995, he pleaded nolo contendere in Rhode Island Superior Court to first degree child molestation and first degree sexual assault.  The court sentenced him to thirty

years' imprisonment, with twelve years to serve, eighteen years suspended and eighteen years' probation.

On October 24, 1995, the Immigration and Naturalization Service ("INS")[1] initiated deportation proceedings against Pereira, charging him with being deportable for having been convicted of an aggravated felony, pursuant to what is now section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). On October 22, 1996, after a hearing, the IJ found that Pereira had been convicted of an aggravated felony and, therefore, ordered him deported. The IJ noted that Pereira sought relief under former § 212(c) of the INA. He found, however, that Pereira was statutorily ineligible for § 212(c) relief because § 440(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") (effective April 24, 1996), which amended section 212(c) to read that it would not apply to an alien who was deportable for having committed an aggravated felony, applied retroactively to Pereira.

Pereira appealed to the BIA, arguing, inter alia, that § 440(d) of AEDPA should not be applied retroactively to him because his conviction had occurred before its enactment. On January 30, 1998, the BIA affirmed the IJ's order and rejected Pereira's challenge to the application of AEDPA, following Matter of Soriano,

_____

[1]On March 1, 2003, the relevant functions of the INS were transferred to the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement. We refer to the agency throughout this opinion as the INS.

-3-

21 I & N Dec. 516 (BIA 1996).  In Soriano, the BIA found that AEDPA's amendments eliminating § 212(c) relief for certain criminal aliens were fully retroactive.  Id. at 519.  At the time of the BIA's decision, Pereira had served less than five years in prison on his aggravated felony conviction.

In 1999, this court, in effect, reversed the BIA's position in Soriano.  See Wallace v. Reno, 194 F.3d 279 (1st Cir. 1999).  We held in Wallace that § 440(d) of AEDPA could not be applied retroactively to aliens who were in deportation proceedings before its enactment.  Id. at 286-87.  Thereafter, the Supreme Court reached a somewhat similar result, also favorable to the consideration of Pereira's § 212(c) application, in INS v. St. Cyr. See 533 U.S. 289, 326 (2001) (holding that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect").

Based on our decision in Wallace, Pereira and the INS jointly moved the BIA to reopen and remand to the immigration court.  On May 17, 2000, the BIA granted the motion, but noted that petitioner might nevertheless be ineligible for § 212(c) relief on the basis of § 511(a) of the Immigration Act of 1990 ("IMMACT"), which precludes an alien who has "been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years"

-4-

from obtaining a section 212(c) waiver.[2]  IMMACT, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052 (1990).  The BIA further noted that a criminal alien has no enforceable right to compel the INS to commence proceedings at a time advantageous to his ability to establish eligibility for relief.  It also stated that because there was a reasonable possibility that Pereira would have served five years in prison before entry of a final order granting him § 212(c) relief, it was not evident that he had a settled expectation regarding the availability of § 212(c) relief.  Because the record did not establish how long Pereira had been incarcerated, the BIA remanded with instructions to the IJ to determine whether Pereira had already served at least five years in prison on his aggravated felony conviction.

At a hearing on December 13, 2001, the IJ determined that Pereira was statutorily ineligible for § 212(c) relief because he had served "some six to seven years" in prison.  Therefore, the IJ denied the application for § 212(c) relief and reentered the order of deportation.  On May 30, 2002, the BIA affirmed without opinion.

---

[2]Section 511(a) of IMMACT amended INA § 212(c), 8 U.S.C. § 1182(c), by adding at the end of § 212(c) the following:

> The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years.

IMMACT, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052 (1990).

-5-

On May 5, 2003, Pereira filed a petition for writ of habeas corpus in the Rhode Island federal district court. The government moved to dismiss the petition based on lack of personal jurisdiction and Pereira's statutory ineligibility for § 212(c) relief. The magistrate judge issued a report and recommendation, recommending that the government's motion to dismiss be granted and Pereira's habeas petition denied. On March 23, 2004, the district court denied and dismissed the habeas petition. This appeal followed.

## II. Discussion

A. The Statutory Scheme

An alien convicted of an "aggravated felony" at any time after admission to the United States is deportable. 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). This Court, however, like others has interpreted former § 212(c) of the INA to give aliens in deportation proceedings, as well as in exclusion proceedings, the right to apply to the Attorney General for a discretionary waiver.[3]

---

[3]Former INA section 212(c) provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . . The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

In 1990, section 511(a) of IMMACT amended INA § 212(c) to preclude the granting of waiver relief to an alien who had been convicted of an aggravated felony and had served for such felony at least five years in prison.  See supra note 2.

The availability of § 212(c) relief was even more drastically curtailed in 1996 by § 440(d) of AEDPA, which restricted the Attorney General's authority to grant discretionary relief from deportation to aliens convicted of certain felonies, regardless of the amount of time they had served.  On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), section 304 of which repealed INA § 212(c) and created a new form of discretionary relief called "cancellation of removal."  See INA § 240A, 8 U.S.C. § 1229b (2000); IIRIRA § 304.  Cancellation of removal is not available to aliens who have been convicted of an aggravated felony.  See INA § 240A, 8 U.S.C. § 1229b (2000); IIRIRA § 304.

B.  Five-Year Bar

Whether an alien continues to accrue time toward the five-year bar to section 212(c) relief after the issuance of a final order of removal based upon an erroneous retroactive

---

INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996).  While the statute expressly applied to exclusion, many courts, as well as ours, have held that it also applied to deportation.  See, e.g., Attwood v. Ashcroft, 260 F.3d 1, 2 n.1 (1st Cir. 2001); Barreiro v. INS, 989 F.2d 62, 63 (1st Cir. 1993).

application of AEDPA and IIRIRA is a question of law this court reviews de novo. See Costa v. INS, 233 F.3d 31, 33 (1st Cir. 2000). In reviewing an agency's construction of a statute it is charged with administering, we ask two questions: (1) "whether Congress has directly spoken to the precise question at issue"; and (2) if Congress has not so spoken, "whether the agency's answer is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). In this case, Congress has directly spoken to the precise question at issue by declaring in unmistakable language that the waiver provision does not apply to an aggravated felon who has served for the felony a prison term of at least five years. See supra note 2.

Pereira does not deny that he has by now served more than five years in state prison for an aggravated felony. And on December 13, 2001, when the IJ considered Pereira's remanded request for § 212(c) relief, he had already been in prison for more than five years. Pereira argues, however, that to deny him the right to have his application considered because of the delay caused by the BIA's prior erroneous legal position would violate his right to due process. He further contends that he is entitled to consideration of his § 212(c) application nunc pro tunc to the date of his original deportation hearing because the five-year delay in the adjudication of his § 212(c) application was solely

due to the BIA's erroneous retroactivity determination in <u>Soriano</u>. See <u>Edwards</u> v. <u>INS</u>, 393 F.3d 299 (2d Cir. 2004).[4]

### 1. The plain language of § 212(c) and our precedent in Gomes v. Ashcroft precludes § 212(c) relief now

We "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." <u>Conn. Nat'l Bank</u> v. <u>Germain</u>, 503 U.S. 249, 253-54 (1992). The Supreme Court has stated that "when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." <u>Hartford Underwriters Ins. Co.</u> v. <u>Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000) (internal quotation marks omitted). At the time Pereira entered his plea in state court on July 14, 1995, the 1990 IMMACT amendments to section 212(c) limited his eligibility for a § 212(c) waiver of deportation. The plain language of section 212(c), in effect at that time, unequivocally provided that discretionary relief under that section is not

---

[4]The government argues that Pereira waived his equitable argument by not raising it in the district court. It appears, however, that Pereira did in fact raise this argument below. In the district court, Pereira noted in his habeas petition that he had argued before the BIA that he should be allowed to have his § 212(c) waiver application adjudicated <u>nunc pro tunc</u> to the date of his original hearing. During the hearing on the motion to dismiss, Pereira's counsel stated that, as relief for the alleged due process violations, Pereira should be allowed to apply for a § 212(c) waiver <u>nunc pro tunc</u> to the date of his original hearing. Pereira made a similar argument in his objection to the magistrate judge's report and recommendation. We believe, therefore, that Pereira preserved his equitable argument.

available to "an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996).

In arguing that Pereira is barred from § 212(c) relief, the government relies on the logic of our decision in Gomes v. Ashcroft, 311 F.3d 43 (1st Cir. 2002). In Gomes, the petitioner was convicted of rape, an aggravated felony, on August 22, 1992 and sentenced to six to twenty years' imprisonment. He began serving the sentence immediately, and eventually was released from prison nearly a decade later, on May 9, 2001. Id. at 44. On January 30, 1996, the petitioner had applied for a waiver of deportability under former section § 212(c) of the INA. On October 23, 1996, the IJ ruled that, under the recently enacted AEDPA, the petitioner was ineligible for former § 212(c) relief, being an aggravated felon. In the alternative, the IJ denied the petitioner's application as a matter of discretion. Id. On October 31, 1997, the BIA affirmed on the first ground and did not consider the IJ's alternative, discretionary basis for denying relief. Id. By this time, the petitioner had been in prison for just over five years. The petitioner filed a habeas petition in district court, which the court denied on the ground that the petitioner had served more than five years' imprisonment for his felony conviction. Id. On appeal, this Court rejected petitioner's argument that he had

served less than five years at the time he filed his § 212(c) application. We said there that "the relevant date is when the BIA issued its decision." Id. at 45.

In reliance on Gomes, the magistrate's report, adopted by the district court in this case, counted against Pereira all the time he served in state prison after the IJ, on October 22, 1996, held, erroneously as it turned out, that § 440(d) of the AEDPA applied retroactively. Pereira does not question the holding in Gomes, but he argues that Gomes is inapposite because (1) the due process claim raised here was not raised in Gomes; and (2) such a claim could not have been raised in Gomes because, there, the erroneous, retroactive application of the AEDPA amendments did not delay Gomes' proceedings; his time simply ran out.

Both in this case and in Gomes, the INS's original denial of § 212(c) relief was based upon its erroneous legal conclusion that the AEDPA amendments applied not only prospectively but retroactively to any alien convicted of an aggravated felony. On this theory, former § 212(c) became a nullity even as to those like Pereira and Gomes whose felony convictions predated enactment of the AEDPA. There is, to be sure, at least one difference between Gomes and this case. In Gomes, the petitioner had served over five years in prison on a sentence for an aggravated felony as of the time the BIA issued its final order of removal on October 31, 1997. In the instant case, however, when the BIA affirmed the IJ's

-11-

original deportation order on January 30, 1998, Pereira had served less than five years in prison. Not until sometime after the BIA granted the joint motion to reopen, based on this court's reversal of Soriano, had Pereira served more than five years in prison.

Despite this distinction, we believe that the holding in Gomes governs this case. We held in Gomes that the time an alien served in prison even after a legally erroneous denial of § 212(c) relief was to be counted towards the five-year bar in § 212(c). 311 F.3d at 45. See also Giusto v. INS, 9 F.3d 8, 10 (2d Cir. 1993) ("reject[ing] [petitioner's] premise that the timing of the INS's initiation of deportation proceedings, rather than the length of time actually served, would determine the availability of the waiver"). "[T]he relevant date is when the BIA issued its decision." Gomes, 311 F.3d at 45 (citing Buitrago-Cuesta v. INS, 7 F.3d 291, 296 (2d Cir. 1993) ("Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief.")).

While Pereira had not served at least five years in prison for an aggravated felony offense at the time the BIA originally affirmed the IJ's order of deportation, he had served more than five years in prison by the time the BIA issued its final order of removal on May 30, 2002. And unfortunate though it may

-12-

be, any and all eligibility for § 212(c) relief had by then run out.  For the INS to grant, or this court to order, waiver relief now would be to provide a form of relief expressly withdrawn by the statute.  The statute states quite flatly that after service of five years' imprisonment, the waiver provision "shall not apply" to the alien.  No exception is provided for.  See INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996).[5]

### 2.  Whether applying the plain language of § 212(c) to Pereira is unconstitutional

Petitioner, indeed, does not strongly urge that, after over five years' incarceration, the statutory language would entitle him to § 212(c) relief.  Rather he argues that to deny him relief in this set of facts amounts to a violation of his constitutional right to due process of law.  He points out that much of the delay was caused by the INS's insistence on an incorrect retroactive reading of the AEDPA.  Ultimately, our court and the Supreme Court forbad retroactive application of the AEDPA

---

[5]The scant legislative history regarding the five-year bar supports the plain reading of the text.  See Giusto, 9 F.3d at 10 (noting that the legislative history regarding the enactment of the five-year bar is scant, and that "inclusion of that section was plainly part of an effort to 'broaden[] the list of serious crimes, conviction of which results in various disabilities and preclusion of benefits under the [INA]'") (quoting H.R. Conf. Rep. No. 955, at 132 (1990), reprinted in 1990 U.S.C.C.A.N. 6710, 6784, 6797).  That Congress chose to apply the five-year bar retroactively, see Buitrago-Cuesta, 7 F.3d at 295; Barreiro, 989 F.2d at 63-64, indicates its intent to preclude aliens who had served at least five years in prison on an aggravated felony offense from receiving § 212(c) relief.

to aliens like Pereira who had pled guilty prior to enactment of the AEDPA in presumed reliance on their right to seek discretionary relief under § 212(c).  See St. Cyr, 533 U.S. at 326; Wallace, 194 F.3d at 286-87.  Pereira argues that it is unfair to the point of being unconstitutional to count against him the time he spent in state prison serving his felony sentence while awaiting correction of the INS's earlier erroneous ruling.  He likens his plight to the due process violation that occurs when an alien is saddled with an incompetent attorney whose malfeasance prevents the alien from timely seeking discretionary relief.  See generally Lozada v. INS, 857 F.2d 10 (1st Cir. 1988).

Here, however, we are not dealing with the breakdown of process occasioned by the ineptness of counsel.  Rather, we deal with a Congressional statute providing that one who has spent at least five years in prison because of an aggravated felony is not entitled to be considered for discretionary relief.  Congress's antagonism towards sheltering aliens who commit felonies has been made clear by its repeated legislation on the subject, all directed at enforcing and expanding its wish to expel such aliens.  See supra pp. 6-7.

Against this backdrop, it seems reasonable to infer that Congress enacted the five-year proviso less to provide an avenue of leniency to persons like Pereira who would go on to serve longer terms (although they, too, could apply within the five years) than

-14-

to assist convicted aliens sentenced to less than a five-year term or, if to a longer term, those who might be pardoned or released before actually serving five years, perhaps because of a subsequent determination of innocence, their exemplary conduct, or some other favorable circumstance. Viewing the purpose of § 212(c) in this light, it would be immaterial to Congress that Pereira might have slipped under the bar had he been able to seek discretionary relief earlier. The important point, once he served five years in prison, was that he now met all the criteria laid down for mandatory deportation: no last-minute reprieve, release, or pardon during the five years had occurred to indicate that he was the sort of person Congress was willing to let remain.

If the above is the thrust of the statute--and the lack of any statutory exception to the five-year rule suggests this to be the case--the only remaining question is whether the Constitution forbids Congress to adopt such a statute. We see no reason why it does. Congress is not required to provide aggravated felons with an avenue for discretionary relief from deportation, and currently does not do so. See INA § 240A, 8 U.S.C. § 1229b(a) (2000). While Congress earlier allowed such relief under § 212(c), it limited § 212(c) to those who had not been imprisoned for over five years (a bar already in place when Pereira entered his guilty plea in 1995). See INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996). While the bar may in some respects fall unevenly,

-15-

as in this case, because of fortuitous circumstances affecting the alien's ability to present his claim before he has served five years, many legal enactments are less than totally equitable in their impact.  See, e.g., Dodd v. United States, 125 S. Ct. 2478, 2483 (2005) ("Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted."); Wickard v. Filburn, 317 U.S. 111, 129-30 (1942) ("An Act of Congress is not to be refused application by the courts as arbitrary and capricious and forbidden by the Due Process Clause merely because it is deemed in a particular case to work an inequitable result.").  We, therefore, reject the argument that application of former § 212(c) of the INA as written violates the Due Process Clause.

### 3.  Whether nunc pro tunc relief is appropriate

Recently, the Second Circuit has held that nunc pro tunc relief should be afforded where aliens have become statutorily ineligible for § 212(c) relief based on the five-year rule subsequent to a legally erroneous denial of their original applications.  Edwards v. INS, 393 F.3d 299, 312 (2d Cir. 2004). This is the only ruling so far by a circuit court on the same issue now before us.  The Second Circuit noted that, based on its precedent, it "might well conclude that whether five years' imprisonment has been served should be decided as of the date on which each alien's final order of deportation was entered." Id. at

-16-

307.  It stated that INS regulations could also be read to support this position.  Id. (citing 8 C.F.R. § 3.2(c)(1) (1996) (recodified at 8 C.F.R. § 1003.2(c)(1)), which states, broadly, that "a motion to reopen proceedings for consideration or further consideration of an application for [§ 212(c) relief] may be granted if the alien demonstrates that he or she <u>was statutorily eligible for such relief prior to the entry of the administratively final order of deportation</u>") (emphasis added).

But rather than decide whether § 212(c), as a matter of statutory interpretation, rendered the petitioners ineligible for such relief, the court held that the petitioners were entitled to <u>nunc pro tunc</u> consideration of their applications.  Id. at 312.  In reaching this result, the court explained that it was justified in providing an exception contrary to the plain language of § 212(c), because Congress did not rule out <u>nunc pro tunc</u> relief and such an approach was common in other immigration contexts.  See id. at 309-10.  The court reasoned that "where agency error has prevented an alien from seeking deportation relief, 'justice . . . require[s],' that the agency rectify that error--and that it do so, if necessary, by means of <u>nunc pro tunc</u> relief."  Id. at 311 (citation omitted).  Pereira urges us to adopt the same approach so that he can have his § 212(c) application adjudicated <u>nunc pro tunc</u> to the date of his original hearing.

We decline the invitation.  As already stated, the language of § 212(c) seems to us utterly clear--the relief sought simply does not exist for an aggravated felon who has served five years of his felony term.  INA § 212(c), 8 U.S.C. § 1182(c) (1994) (repealed 1996).  In describing the limits of the nunc pro tunc doctrine under Massachusetts law, we have stated that nunc pro tunc authority may only be used to correct inadvertent or clerical errors, and not to remedy "a defect in a judgment, order or decree which expressed exactly the intention of the [agency] at the time when it was made."  Fierro v. Reno, 217 F.3d 1, 5 (1st Cir. 2000).  But see Edwards, 393 F.3d at 309 n.12 (rejecting the description of the limits of nunc pro tunc authority set out in Fierro).[6]

---

[6]We recognize that it is not uncommon, when dealing with conventional statutes of limitation, to provide for equitable relief to individuals unable, through no fault of their own, to meet a time limitation.  One might at first believe this to be a comparable situation.  But as we indicated above, we do not see the five years as a time bar designed to prevent stale claims or the like, but rather as a grace period intended primarily to screen out those convicted felons whose period of actual imprisonment turns out to be less than five years, reflecting, at least in many cases, a lesser degree of culpability.  While, to be sure, the statute allows felons whose term of imprisonment goes on for more than five years to also seek waiver relief during the first five years, this is more an incidental consequence than a main one.  Given not only the uncompromising language of the five-year bar, which notes no exception, but also the history of Congress's desire to expel convicted aggravated felons, we disagree with the Second Circuit's suggestion, expressed in Edwards, that Congress, confronted with the instant situation, might likely have desired that a court make an exception to its own statutory language.

-18-

Pereira argues that other circuits have employed the nunc pro tunc doctrine to remedy significant errors in immigration proceedings.  See Snajder v. INS, 29 F.3d 1203 (7th Cir. 1994) (holding that petitioner would have right to apply for § 212(c) relief, even though he had served five years' imprisonment as an aggravated felon, where his right to counsel had been violated in the original deportation hearing); Batanic v. INS, 12 F.3d 662, 667 (7th Cir. 1993) ("The only way to cure the [violation of the right to counsel] in the original hearing is to afford [petitioner] not only a new hearing, but a new hearing in which counsel effectively may protect [petitioner's] rights to the same extent that the attorney would have in the first hearing."); Castillo-Perez v. INS, 212 F.3d 518 (9th Cir. 2000) (remanding case with instructions to apply the law as it existed at the time of the original hearing due to ineffective assistance of counsel at the original hearing). Pereira claims that, in light of the BIA's erroneous legal interpretation, denial of the opportunity to apply nunc pro tunc for § 212(c) relief would similarly amount to a due process violation.  All of those cases, however, involved a constitutional violation of the right to counsel.  Compare Lozada, 857 F.2d at 13 ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.") (internal quotation marks omitted).

Here, Pereira was denied the opportunity to seek timely section 212(c) relief under a good faith legal interpretation of the law at the time. Thereafter, the matter was litigated and in due course resolved. The INS's initial position, while eventually found by the courts to be legally erroneous, was not frivolous and there is nothing to suggest it was pursued in bad faith. While it may seem unfair not to allow Pereira to seek discretionary relief now, the fact remains that Congress has mandated that such relief is now no longer available.

The plain language of former § 212(c) clearly provides that an alien who spends at least five years in prison on an aggravated felony offense is ineligible to seek § 212(c) relief. Counting the time Pereira spent in prison after his § 212(c) application was disallowed under <u>Soriano</u> is required by the plain language of § 212(c) and <u>Gomes</u>.

**<u>Affirmed</u>**.