**Ramiro FERNANDES PEREIRA,
Petitioner, Appellant,**

v.

**Alberto GONZALES, Attorney
General,\* et al., Respondents,
Appellees.**

**No. 04–1473.**

United States Court of Appeals,
First Circuit.

Jan. 23, 2006.

Randy Olen, Providence, RI, for Petitioner–Appellant.

Robin E. Feder, U.S. Attorney's Office, Providence, RI, for Respondents–Appellees.

Before BOUDIN, Chief Judge, TORRUELLA and SELYA, Circuit Judges, CAMPBELL and CYR, Senior Circuit Judges, LYNCH, LIPEZ, and HOWARD, Circuit Judges.

The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and the petition for rehearing en banc be denied.

LIPEZ, Circuit Judge, dissenting.

I respectfully dissent from the denial of en banc review. This case involves difficult issues of exceptional importance and adds to a circuit split. Faced with a petition for relief from deportation [1] by a noncitizen serving a state prison sentence of twelve or more years for child molestation and sexual assault, the panel in this case concluded that equitable relief—*nunc pro tunc* relief—was not available. Eschewing a more narrow ground for its decision, the panel issued a decision that, in my view, improperly construes the scope of *nunc pro tunc* relief and due process rights for immigrants facing deportation. Thus, while I agree that this petitioner is not entitled to *nunc pro tunc* relief, I disagree with the broad grounds upon which the panel based its decision. In light of the

---

\* Alberto Gonzales was sworn in as Attorney General of the United States on February 3, 2005. We have substituted him for John Ashcroft, previous holder of that office, as the respondent. *See* Fed. R.App. P. 43(c)(2).

1. The terms "deportation" and "removal" are used interchangeably in this dissent.

negative consequences that may flow to petitioners with far more compelling equities, I believe that the panel's opinion should have been reviewed by the en banc court.

## I.

This case addressed the question of "whether an alien aggravated felon, serving a state prison sentence of twelve or more years, whose application for a section 212(c) waiver was delayed for several years by an erroneous agency legal interpretation so that he had served more than five years of his felony sentence by the time he could proceed with the waiver application, is now barred by law from seeking a waiver." *Fernándes Pereira v. Gonzales*, 417 F.3d 38, 40 (1st Cir.2005). The discretionary waiver provision, former § 212(c) of the Immigration and Nationality Act ("INA"), permits the Attorney General to waive deportation for certain eligible immigrants, but bars from relief "an alien who has been convicted of one or more aggravated felonies and served for such felony and felonies a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1994) (repealed 1996). Ramiro Fernándes–Pereira, facing deportation for his criminal conviction, applied for a § 212(c) waiver during his administrative deportation hearing. Although he was eligible for a § 212(c) waiver throughout the course of the proceedings, the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) erroneously denied him an adjudication of his application.[2] When Fernándes–Pereira and the Immigration and Naturalization Service[3] jointly moved to reopen his proceedings, the IJ and the BIA agreed that they had previously erred, but concluded that he was no longer eligible for the waiver because he had since served more than five years of his sentence.

The petitioner appealed the decision of the BIA to this court, and the panel con-

2. The agency's error was its retroactive application of § 440(d) of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which eliminated INA § 212(c) relief for immigrants with "aggravated felony" convictions. *See* AEPDA, Pub.L. No. 104–132, 110 Stat. 1214 (1996). The Attorney General, in a decision binding on the BIA, concluded that AEDPA § 440(d) applied broadly to all individuals with "aggravated felony" convictions in deportation proceedings, including those who had pled guilty to crimes prior to the enactment of AEDPA and who would have been otherwise eligible for discretionary relief. *In re Soriano*, 21 I. & N. Dec. 516, 533–40 (BIA 1996, A.G.1997). Thus, even though Fernándes–Pereira pled nolo contendere to sexual assault and child molestation before AEDPA's enactment, the IJ and the BIA concluded that he was statutorily ineligible for § 212(c) relief under AEDPA.

We essentially reversed the Attorney General's position on this issue in *Wallace v. Reno*, 194 F.3d 279, 287 (1st Cir.1999), holding that § 440(d) of AEDPA does not apply to immigrants who were in deportation proceedings prior to its enactment. On different grounds, the Supreme Court also rejected the reasoning in *Soriano*, and held that § 440(d) of AEDPA does not apply to individuals who, like Fernándes–Pereira, were convicted on the basis of plea agreements prior to the enactment of AEDPA. *See INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that " § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect"). Following our decision in *Wallace*, in light of the agency's error, Fernándes–Pereira and the Immigration and Naturalization Service jointly filed a motion to reopen his case.

3. On March 1, 2003, the relevant functions of the Immigration and Naturalization Service were transferred to the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement.

cluded that the defendant was barred from seeking relief under the statute. In doing so, the panel rejected the approach of the Second Circuit in a recent decision permitting a petitioner under similar circumstances to file his § 212(c) application nunc pro tunc (literally "now for then")-treating the application as if filed when the petitioner had first sought the waiver and was eligible. *Fernándes Pereira*, 417 F.3d at 47 (disagreeing with the holding in *Edwards v. INS*, 393 F.3d 299, 311 (2nd Cir.2004) that *nunc pro tunc* relief is available for petitioners who accrued more than five years' imprisonment subsequent to the entry of a final order of removal and the erroneous denial of an application for § 212(c) relief). The panel also rejected the petitioner's argument that the agency's error in this case and the application of the statutory eligibility bar despite that error violated his due process rights. The petitioner then filed a petition for panel rehearing and rehearing en banc, which was denied.

## II.

In my view, the panel's opinion errs in two ways that warrant en banc review. First, the opinion improperly limits the availability of equitable relief for immigrants, which may have negative consequences for immigrants with a variety of

strong claims in other contexts. Second, the opinion takes the wrong approach to the due process issue in this case. That error may contribute to a misunderstanding of the due process rights implicated by the erroneous failure to adjudicate an immigrant's application for relief.[4] As discussed in further detail below, the opinion should have dispatched these issues more narrowly, denying the petitioner's claim for *nunc pro tunc* relief on equitable grounds and rejecting his due process argument because of his failure to show a reasonable likelihood that he would have received § 212(c) relief if he had been permitted to apply. Instead, the broad basis for the panel's rejection of the petitioner's *nunc pro tunc* and due process arguments may prevent other individuals with more compelling claims from receiving relief.

## A. *Nunc pro tunc* relief

The petitioner argues that the opinion creates an unprecedented bar to equitable relief and ignores applicable agency decisions in which the doctrine of *nunc pro tunc* has been invoked. There is merit to the petitioner's assertions. While I do not think the petitioner himself is deserving of *nunc pro tunc* relief, I believe that the panel's opinion went too far by finding that

---

**4.** I also question the panel's discussion of whether the time accrued in prison after a final order of removal counts towards the five-year statutory bar. *See Fernándes Pereira*, 417 F.3d at 44–45. As we have explained, "[t]he relevant date [for measuring the five-year statutory bar] is when the BIA issued its decision." *Gomes v. Ashcroft*, 311 F.3d 43, 45 (1st Cir.2002). Applying that rule, the panel here concluded that "[w]hile Pereira had not served at least five years in prison for an aggravated felony offense at the time the BIA *originally* affirmed the IJ's order of deportation, he had served more than five years in prison by the time the BIA issued *its final order of removal on May 30, 2002.*" *Fer-*

*nándes Pereira*, 417 F.3d at 44–45 (emphasis added). However, May 30, 2002 is the date when the agency issued a final decision on the petitioner's *motion to reopen*, and not, as the opinion suggests, the "final order of removal." I do not believe that the panel intended to suggest that the motion to reopen somehow changed the finality of the order of removal. *See Stone v. INS*, 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) ("[A] deportation order is final, and reviewable, when issued. Its finality is not affected by the subsequent filing of a motion to reconsider."). The panel's analysis of this issue should not be read to alter doctrines concerning the finality of administrative removal orders.

*nunc pro tunc* relief is unavailable due to the statute's eligibility requirements and the type of error involved in this case. Thus, this decision may foreclose relief for petitioners in a wide variety of circumstances.

The panel concluded that the statute created a clear bar to § 212(c) relief for the petitioner, and that "[g]iven not only the uncompromising language of the five-year bar, which notes no exception, but also the history of Congress's desire to expel convicted aggravated felons, we disagree with the Second Circuit's suggestion, expressed in *Edwards*, that Congress, confronted with the instant situation, might likely have desired that a court make an exception to its own statutory language." *Fernándes Pereira*, 417 F.3d at 47 n. 6. In rejecting the reasoning in *Edwards*, the panel suggested that *nunc pro tunc* relief applies only in limited contexts, such as the correction of "inadvertent or clerical errors" or constitutional violations, which, the panel determined, were not at issue in this case.[5] *Id.* at 47. Under the panel's analysis, *nunc pro tunc* relief is not available for petitioners who have become ineligible for discretionary relief from deportation following an erroneous legal interpretation by the agency, even when equity so demands.

In my view, the panel's analysis of the statute does not resolve the question of whether *nunc pro tunc* relief is available in this case. To be sure, the statute has eligibility requirements. However, § 212(c) relief has always included specific eligibility requirements, yet the BIA has applied *nunc pro tunc* relief to provide certain ineligible immigrants with relief from removal for over sixty years. Congress can preclude the availability of equitable relief by making statutes jurisdictional. Yet Congress has codified, recodified, and amended the § 212(c) statute many times without making its eligibility requirements jurisdictional, despite the BIA's repeated use of *nunc pro tunc* relief. I am concerned with the panel's conclusion that, because Congress wishes to deport certain noncitizens with criminal records, Congress also wishes to preclude the agency from exercising the equitable relief that it has used to correct errors and further the interests of justice under extraordinary circumstances for several decades.[6]

The Attorney General and the BIA have long held that *nunc pro tunc* relief is available to noncitizens who have become ineligible for discretionary relief but present strong equities indicating that an application for such relief, if available, would be granted and deportation prevented. *See Matter of L-*, 1 I. & N. Dec 1, 4–7 (A.G. 1940) (holding that Attorney General can exercise discretion to waive deportation *nunc pro tunc* for a noncitizen with strong equities); *Matter of Ducret*, 15 I. & N. Dec. 620, 622 (BIA 1976) (holding that a noncitizen with strong equities may reapply for admission into the United States *nunc pro tunc* if "proceedings would then be terminated in [his] favor"); *Matter of*

---

5. By assuming that *nunc pro tunc* relief may be available to address constitutional errors, the panel's decision does not disavow the approach taken by courts in that context, *see, e.g., Snajder v. INS*, 29 F.3d 1203, 1207–08 (7th Cir.1994), nor does this dissent.

6. Although the agency here denied the petitioner's request to "have [] his case heard prior to the time that he had served five years," the limits on *nunc pro tunc* relief described in the panel's opinion were not mentioned by the agency in the proceedings below. The agency simply did not explore the issue of whether Congress explicitly precluded *nunc pro tunc* relief in light of the five-year bar.

*T-*, 6 I. & N. Dec. 410, 413 (BIA 1954) (*nunc pro tunc* relief available when "complete justice to an alien dictates such extraordinary action"). When determining if *nunc pro tunc* relief is available in this context, the critical question for the agency is whether permitting a petitioner to apply would "conclude the proceedings" in his or her favor. *Matter of Ducret*, 15 I. & N. Dec. at 621–22. That is, if the petitioner lacks strong equities or would nonetheless be removable on other grounds, *nunc pro tunc* relief would not be appropriate. *See id.; Matter of T-*, 6 I. & N. at 413; *see also Matter of Roman*, 19 I. & N. Dec. 855, 859 (BIA 1988) (finding *nunc pro tunc* relief unavailable where petitioner would remain deportable on other grounds even if relief was granted).

The agency has not concluded that the existence of statutory eligibility requirements categorically bars *nunc pro tunc* relief. Indeed, there would be no need for *nunc pro tunc* relief unless the petitioner seeking relief had become statutorily ineligible. For example, in *Matter of L-*, the Attorney General held that he could exercise discretion to award, *nunc pro tunc*, a waiver of deportation under the predecessor statute to § 212(c). 1 I. & N. at 4–7. The immigrant in *Matter of L-* had a criminal conviction and left the country on a short trip. He was readmitted without incident, but deportation proceedings were later commenced based on his conviction. Despite the fact that the immigrant was statutorily barred from seeking discretionary relief during the deportation proceedings, the Attorney General noted that the immigrant would have been eligible for relief if he had applied when he was being readmitted to the country. The Attorney General found *nunc pro tunc* relief appropriate, noting the immigrant's strong equities and stating that "[a]dvance exercise of authority under the seventh proviso [a predecessor to § 212(c)] is a long-established

and useful practice in the Immigration and Naturalization Service. A later, corrective exercise of the authority is similarly proper." *Id.* at 6. As the Attorney General noted, "[s]uch action, *nunc pro tunc*, amounts to little more than a correction of a record of entry, which is a frequent and indispensable practice in many and varied situations" despite the statutory bar. *Id.*

The BIA continues to apply *nunc pro tunc* relief in similar situations. In a recent unpublished decision, the BIA permitted a lawful permanent resident, barred by statute from seeking relief under INA § 212(h) (another discretionary waiver provision, similar to § 212(c)), to apply for relief *nunc pro tunc* since he had been eligible for the waiver before he had adjusted his status to a lawful permanent resident. *See In re Abdul Raheem Alamutu*, 2005 WL 952470 (BIA April 13, 2005). The BIA explained that this *nunc pro tunc* relief was possible despite the fact that the immigrant was not currently eligible for a § 212(h) waiver:

> Because *nunc pro tunc* relief has a retroactive effect, i.e., it has the same effect as if done when it should have been done, neither the fact that the respondent is a lawful permanent resident who would not now be eligible for a section 212(h) waiver for failure to meet the continuous lawful residence requirement nor the fact that the respondent is no longer married to the United States citizen who filed the immediate relative visa petition on his behalf, have any bearing on the respondent's eligibility for a *nunc pro tunc* section 212(h) waiver.

*Id.* The BIA also characterized this relief as amounting to " 'little more than a correction of a record of entry.' " *Id.* (quoting *Matter of L-*, 1 I. & N. Dec at 6).

The BIA has long found *nunc pro tunc* relief available in cases where a petitioner with strong equities applies for relief and

would at one point be eligible, but then comes under a statutory bar. By reading § 212(c) to preclude such "exceptions," the panel decision improperly curbs the availability of *nunc pro tunc* relief in a wide variety of situations where statutory bars exist in the immigration context.[7]

However, I do not believe that the petitioner in this case merits *nunc pro tunc* relief as a matter of equity. Assuming that some assessment of the likelihood of relief in administrative proceedings on remand is appropriate on review in this *nunc pro tunc* context, Fernándes–Pereira's petition falls short.[8] While he has been present in this country for many years, his petition provides no evidence of any other equities in his favor, and his conviction is for a particularly heinous crime, sexual assault and child molestation. Therefore, his case does not present the "many sympathetic and mitigating factors" reasonably likely to justify *nunc pro tunc* relief as a matter of equity. *Matter of T-*, 6 I. & N. Dec. at 413.

7. The panel supports its narrow interpretation of the scope of *nunc pro tunc* relief by citing *Fierro v. Reno*, 217 F.3d 1 (1st Cir. 2000). *See Fernándes Pereira*, 417 F.3d at 47 (noting our reasoning in *Fierro* that the use of *nunc pro tunc* relief is limited to the correction of inadvertent or clerical errors). *Fierro* was an immigration case where a petitioner attempted to use a state court custody decree, issued *nunc pro tunc*, to establish his citizenship status under the naturalization statute. Although *Fierro* involved a removal proceeding, the question that prompted our *nunc pro tunc* analysis was "[w]hether [the state court custody decree] is a proper *nunc pro tunc* order *under state law*." *Id.* at 4 (emphasis added). Thus, we considered "the conventional preconditions under Massachusetts law for a revision of the original decree *nunc pro tunc*." *Id.* at 5. We did not analyze the scope of *nunc pro tunc* relief under immigration law as applied by the BIA or the Attorney General in agency decisions. This distinction is important because *Fierro*, as I understand it, cautions against analyzing *nunc pro tunc* relief out of context. "Like many other concepts in the law wrongly assumed to have a fixed meaning, *nunc pro tunc* is a somewhat loose concept, like 'jurisdiction' or 'waiver,' used somewhat differently by different courts in different contexts.... The critical question here is ... in what circumstances a court may properly order that a new judgment be given effect *nunc pro tunc*." *Id.* at 4–5. While an analysis of Massachusetts law supports only a narrow use of *nunc pro tunc* relief by state courts, an analysis of immigration law reveals that the immigration agency has long used *nunc pro tunc* relief to provide certain petitioners with relief from deportation on equitable grounds.

In any case, we explicitly limited *Fierro* to its facts. We noted that the state court issued the *nunc pro tunc* decree even though there was "no suggestion that the original custody decree was entered by mistake [or] was contrary to law." *Id.* at 6. Given such circumstances, we concluded that there was no indication that the state court could create a loophole in the naturalization statute. However, we refused to make a "categorical pronouncement[]" and explained that "[o]ur own decision is limited to the circumstances before us." *Id.* at 7. Similar caution is merited in this case, where the *nunc pro tunc* issue can be dispatched on narrow grounds.

8. The agency's erroneous failure to consider the petitioner's request for *nunc pro tunc* relief places the reviewing court in a difficult position. Generally, when an agency decision cannot be sustained on its stated grounds, remand is appropriate. *See de Rivera v. Ashcroft*, 394 F.3d 37, 40 (1st Cir.2005) (remanding petition due to agency's erroneous failure to consider adjustment of status application). However, remand is sometimes not required when the error of the agency is harmless. *See White v. INS*, 17 F.3d 475, 479–80 (1st Cir. 1994) (determining that agency's error was "marginal" where correct approach would not have changed the outcome in petitioner's case). In the context of a petitioner's request for *nunc pro tunc* relief on equitable grounds, it may be appropriate for the reviewing court to assess whether it is reasonably likely that the agency would have granted *nunc pro tunc* relief if it had properly considered such relief available. Such analysis would be akin to a showing of prejudice, *see infra* Part II(B). Under this analysis, the petitioner's request for *nunc pro tunc* relief would be unavailing.

My concern thus goes beyond the petitioner in this particular case. The panel's opinion rests on broad grounds-the unavailability of *nunc pro tunc* relief to correct the agency's failure to adjudicate a § 212(c) application because of a statutory bar. This conclusion is contrary to agency decisions and is unnecessary to dispatch the petitioner's argument. *Nunc pro tunc* relief, traditionally available in immigration cases beyond the context of clerical errors and constitutional violations, would be nonetheless inappropriate based on the equities of the petitioner's case. The panel's broader conclusion may prevent much more deserving petitioners from receiving equitable relief in a variety of contexts.

## B. Due process rights

In his petition for rehearing, Fernándes–Pereira asserts that the error in his removal hearing is a due process violation, and thus he should be permitted to apply for a § 212(c) waiver despite the statutory bar. Although the panel rejected his argument, I do not find in its decision a traditional due process analysis. I agree that the petitioner's due process argument is ultimately unavailing, but I have serious concerns about the panel's approach to this issue.

The panel's opinion notes that courts have granted relief despite statutory bars when a petitioner's right to counsel has been violated. However, the opinion states that "we are not dealing with the breakdown of process occasioned by the ineptness of counsel" in this case. *Fernándes Pereira*, 417 F.3d at 45. The opinion later explains, in its discussion of *nunc pro tunc* relief, that awarding relief based on a constitutional violation in this case would be inappropriate because the petitioner was "denied the opportunity to seek timely section 212(c) relief under a good faith legal interpretation of the law at the time. Thereafter, the matter was litigated and in due course resolved. The INS's initial position, while eventually found by the courts to be legally erroneous, was not frivolous and there is nothing to suggest it was pursued in bad faith." *Id.* at 47–48.

It seems unusual to inject this "good faith legal interpretation" reasoning in a due process analysis. Neither the petitioner nor the government proposed this approach, and the panel's opinion did not elaborate on the basis or precedent for this reasoning. The more traditional and proper analysis of a due process claim would be to examine the consequences of the agency error for the petitioner, not to assess the good faith of the agency. *See Choeum v. INS*, 129 F.3d 29, 38–40 (1st Cir.1997) (concluding that agency's interpretation of a statutory provision would violate due process because it would deprive petitioner of procedural rights and an opportunity to be heard).

The panel's opinion therefore appears to be rejecting a due process claim without undertaking a due process analysis. This approach is troubling because it is at least arguable that the type of error in this case could be a due process violation for some petitioners in some contexts. While there is no entitlement to the favorable exercise of discretionary relief, the failure to adjudicate an application for relief may violate a petitioner's due process rights.

We have stated that "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the core of these due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard." *Choeum*, 129 F.3d at 38 (citations and internal quotations omitted); *see also United States v. Lopez–Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002) (explaining that "due process requires that an alien who faces [removal] be

provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard"). A substantial part of an immigrant's defense in a deportation hearing is the assertion that he or she is eligible for certain forms of relief.[9] Indeed, the agency is required, by mandatory language in its own regulations, to inform immigrants in deportation hearings of their eligibility for relief and to adjudicate their applications for such relief.[10] Therefore, it is arguable that the agency's failure to adjudicate a petitioner's application for relief may violate his or her due process right to a meaningful opportunity to be heard.[11]

However, the petitioner's argument may nonetheless fail given the facts of his case. While the agency was required to adjudicate Fernándes–Pereira's application, it was not required to grant the relief requested. It therefore may be appropriate to analyze whether Fernándes–Pereira has demonstrated any prejudice due to the agency error, as we have required in other cases involving the fundamental fairness of immigration proceedings. *See Lattab v. Ashcroft,* 384 F.3d 8, 20 (1st Cir.2004) (explaining that "before a petitioner in an immigration case may advance a procedural due process claim, he must allege some cognizable prejudice fairly attributable to the challenged process"); *United States v. Loaisiga,* 104 F.3d 484, 487 (1st Cir.1997) (noting that, in context of demonstrating fundamental unfairness of a deportation order upon collateral attack, "the defendant must show prejudice in the sense of a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred");

9. It is worth noting that the "right to counsel" cases, cited and distinguished in the panel's opinion, granted relief based on due process and/or statutory violations because the petitioners were effectively prevented from applying for relief from deportation. *See Castillo–Perez v. INS,* 212 F.3d 518 (9th Cir.2000) (permitting petitioner to file applications for asylum and suspension of deportation *nunc pro tunc* where attorney failed to file motions for relief despite requests of petitioner); *Snajder,* 29 F.3d at 1203–08 (allowing petitioner to file applications for § 212(c) relief and adjustment of status despite spending more than five years in prison because he had been eligible for relief during the time of his original hearing but the IJ failed to properly advise him of his right to counsel and counsel would have advised him to seek such relief); *Batanic v. INS,* 12 F.3d 662 (7th Cir.1993) (permitting petitioner to file an asylum application *nunc pro tunc* where IJ held hearing without petitioner's counsel present and petitioner failed to apply for asylum).

10. 8 C.F.R. § 1240.11(a)(2) ("The immigration judge *shall* inform the alien of his or her apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this chapter and *shall* afford the alien an opportunity to make an application during the hearing.") (emphasis added); 8 C.F.R. § 242.17(a) (amended 1998) ("The immigration judge *shall* inform the respondent of his or her apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and *shall* afford the respondent an opportunity to make application therefor during the hearing.") (emphasis added); 8 C.F.R. § 212.3(e)(1) ("An application for the exercise of discretion under section 212(c) of the Act may be ... submitted in proceedings before an Immigration Judge.... Such application *shall* be adjudicated by the Immigration Judge.") (emphasis added).

11. *Cf. United States v. Torres,* 383 F.3d 92, 103–04 (3rd Cir.2004) (noting without applying 'opportunity to be heard' argument in illegal reentry case involving agency's erroneous failure to adjudicate § 212(c) application); *Lopez–Ortiz,* 313 F.3d at 230–31 (same); *United States v. Lepore,* 304 F.Supp.2d 183, 197 n. 8 (D.Mass.2004) (same). *But see Nguyen v. Bureau of Immigration & Customs Enforcement,* 400 F.3d 255, 259 (5th Cir.2005) (per curiam) (concluding that petitioner had a "fair opportunity to be heard" despite agency's erroneous failure to adjudicate § 212(c) application).

*see also Reyes–Melendez v. INS*, 342 F.3d 1001, 1007 (9th Cir.2003) ("As a predicate to obtaining relief for a violation of procedural due process rights in immigration proceedings, an alien must show that the violation prejudiced him.") (citation and internal quotation marks omitted). As discussed above, Fernándes–Pereira's conviction is for a serious and violent crime and he has failed to demonstrate any equitable factors in his favor beyond his long residency here. Under such circumstances, it is not reasonably likely that he would have obtained § 212(c) relief if he had been permitted to apply.

However, the same may not be true for all cases in which the agency fails to adjudicate an application for relief. It seems problematic to conclude that this kind of agency error is not an important procedural error simply because the agency made the error in good faith. This troubling reasoning may be inappropriately applied to other situations where the agency violates a statute or its regulations mandating the adjudication of applications for relief and then fails to correct its error despite prejudice to the petitioner. It is wrong to focus on the good faith of the agency, rather than on the consequences of the error for the petitioner.

### III.

To summarize, the panel's opinion presents two significant issues that merit en banc review. First, it misconstrues the scope of *nunc pro tunc* relief, in a manner contrary to agency decisions, and thus may improperly limit the availability of equitable relief for many immigrants with strong claims. Second, the opinion does not undertake the proper due process analysis, and thus may lead to confusion over the scope of due process rights available to individuals in deportation proceedings.

I believe that we should have taken a different approach, denying the petitioner's *nunc pro tunc* claim on equitable grounds and rejecting his due process argument because of his failure to demonstrate a reasonable likelihood that he would have received a § 212(c) waiver if permitted to apply. In light of the important issues involved in this case and the troubling consequences that this opinion may have for future cases involving the scope of equitable relief and due process rights for immigrants facing deportation, I respectfully dissent from the denial of en banc review.