# United States Court of Appeals
## For the First Circuit

No. 06-1813

DIGNA PEREZ DE VEGA,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF A FINAL ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Howard, <u>Circuit Judges</u>.

<u>Jeffrey B. Rubin</u> for petitioner.
<u>Jennifer Levings</u>, Attorney, Office of Immigration Litigation,
U.S. Department of Justice, with whom <u>Peter D. Keisler</u>, Assistant
Attorney General, and <u>Greg D. Mack</u>, Senior Litigation Counsel, were
on brief, for respondent.

September 17, 2007

**LIPEZ**, **Circuit Judge**.  Appellant Digna Perez de Vega claims that the Bureau of Immigration Appeals ("BIA") improperly found her inadmissible and removable.  A citizen of the Dominican Republic, de Vega contends that after she had lived in the United States for eleven years as a lawful permanent resident, her brief visit to her home country was not sufficient for a finding of inadmissibility.  She claims that the Supreme Court's decision in Rosenberg v. Fleuti, 374 U.S. 449, 460-61 (1963), holding that lawful permanent residents who take innocent, casual, and brief trips outside the country are not "entering" upon their return to the United States, remains good law, despite a significant 1996 revision to the statutory provision interpreted in Fleuti.  She further argues that the Immigration Judge ("IJ") incorrectly found that she was ineligible for cancellation of removal because she had been convicted of an aggravated felony.  De Vega's arguments are unavailing and we affirm the decision of the BIA.

## I.

We begin with a brief sketch of the relevant statutory provisions.  Prior to 1996, a lawful permanent resident ("LPR") would not be considered to be "entering" (and therefore would not be subject to various entrance requirements) if her departure from the country "was not intended or reasonably expected by [her]."  8 U.S.C. § 1101(a)(13) (1994).  The Supreme Court, in Fleuti, held that an LPR who took an "innocent, casual, and brief" trip outside

-2-

the United States could not be deemed to have "intended" to depart, and thus was not "entering" upon her return. 374 U.S. at 461-62. Thus, when an LPR briefly left the country and returned, the primary legal issue was the nature and duration of the trip, as those factors would determine whether the person had "intended" to leave.

In 1996, Congress revised the Immigration and Nationality Act ("INA") by passing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which deleted the legal term "entry" and replaced it with the terms "admission" and "admitted." Pub. L. 104-208, § 308(f)(1)(A), (B).[1] The revised statute provides that an LPR is not considered to be seeking admission when entering the United States, unless she falls within one of six defined categories. 8 U.S.C. § 1101(a)(13)(C). The relevant category for this case covers LPRs who have "committed an offense identified in section 1182(a)(2)," id., meaning those LPRs who have been convicted of, "or who admit[] having committed, or who admit[] committing acts which constitute the essential elements of," a crime involving moral turpitude. Id. § 1182(a)(2)(A)(i)(I).

The BIA first addressed the viability of the Fleuti doctrine, in light of IIRIRA's modifications to the INA, in 1998,

---

[1] Under the revised statute, an alien is "admitted" to the United States if she enters lawfully after inspection and authorization by an immigration officer. 8 U.S.C. § 1101(a)(13)(A).

and concluded that IIRIRA had abrogated Fleuti's exemption of LPRs who departed the country for innocent, casual, and brief trips from the legal requirements for "entry" (or its current equivalent, "admission"). In re Matter of Collado-Munoz, 21 I. & N. Dec. 1061, 1065 (1998) ("[W]e find that the Fleuti doctrine, with its origins in the no longer existent definition of 'entry' in the Act, does not survive the enactment of the IIRIRA as a judicial doctrine."). The BIA held that the plain text of the statute meant that LPRs who leave the country and return, if they fall within one of the six enumerated categories, "shall be regarded as 'seeking an admission' into the United States, without regard to whether the alien's departure from the United States might previously have been regarded as 'brief, casual, and innocent' under the Fleuti doctrine." Id. at 1066. The BIA has since reaffirmed this interpretation. See, e.g., In re Nhat Hoang Do, No. A73-256-398, 2005 WL 3709267 (BIA Dec. 30, 2005).

## II.

With this statutory background, we turn to the facts of this case. De Vega entered the United States, apparently illegally, in 1988 and adjusted her status to LPR in 1992. In 1998, while living in Massachusetts, de Vega was charged, in a single indictment, with larceny of property valued at more than $250.00 and false representations to the Department of Public Welfare in order to secure support. She admitted to facts

-4-

sufficient for a finding of guilt, and the court issued a continuation without a finding of guilt, contingent on her payment of $27,963 in restitution over six years.

In December 2003, de Vega traveled to the Dominican Republic to visit her family. Upon her return to Boston on January 3, 2004, the Department of Homeland Security determined that she was an "arriving alien," and that she was inadmissible under 8 U.S.C. § 1101(a)(13)(C) because of her criminal conviction. De Vega appeared before an IJ, where she admitted that she was a citizen of the Dominican Republic, that she had committed a crime involving moral turpitude, and that she was thereby removable. She nonetheless moved to terminate the proceedings, claiming that she could not be classified as seeking "admission" to the United States because she was an LPR and had left the country only for an "innocent, casual, and brief" trip, Fleuti, 374 U.S. at 460-61. She also filed a petition for cancellation of removal, arguing that the larceny and fraud charges had not resulted in a "conviction" for an aggravated felony, thereby rendering her eligible for that form of relief.

The IJ denied de Vega's motion to terminate, finding that the Fleuti doctrine had been superseded by Congress's 1996 amendments to the INA. Therefore, the nature and duration of de Vega's visit to the Dominican Republic were irrelevant, and her prior conviction required that she satisfy the conditions for

-5-

admission. The IJ also denied her request for cancellation of removal because de Vega's 1998 continuation without a finding of guilt for false representations amounted to an aggravated felony conviction, as defined by 8 U.S.C. § 1101(a)(43)(M), resulting in ineligibility for cancellation, id. § 1229b(a). Based on these findings, the IJ ordered de Vega removed to the Dominican Republic.

De Vega appealed to the BIA, which affirmed the IJ's decision without further opinion. She then appealed to this court. Because the BIA affirmed without writing its own opinion, we review the IJ's decision. See Simo v. Gonzales, 445 F.3d 7, 11 (1st Cir. 2006); Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005). Our review of the agency's statutory interpretations is de novo, although we give deference, in accordance with Chevron U.S.A v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984), to the agency's reasonable interpretations of ambiguous or unclear statutory terms. We give significant deference to the agency's factual findings. Hoxha v. Gonzales, 446 F.3d 210, 216 (1st Cir. 2006) ("We review the IJ's factual findings . . . 'under the deferential substantial evidence standard.'" (quoting Dhima v. Gonzales, 416 F.3d 92, 95 (1st Cir. 2005))).

## III.

We turn first to the current viability of the Fleuti doctrine, in light of IIRIRA's revisions to the INA. Our court has not previously addressed this question, although the other courts

of appeals that have confronted it have upheld the BIA's interpretation of IIRIRA.  Most recently, the Fifth Circuit held that "IIRIRA superseded the Fleuti doctrine . . . . The plain language of the statute does not allow for the exception found by the Court in Fleuti."  Malagon de Fuentes v. Gonzales, 462 F.3d 498, 501 (5th Cir. 2006) (footnote omitted).  The Fifth Circuit also noted that its decision was consistent with those of other circuits.  Id. at 501-02 (citing Tapia v. Ashcroft, 351 F.3d 795, 799 (7th Cir. 2003); Tineo v. Ashcroft, 350 F.3d 382, 394 (3d Cir. 2003)).

We agree with the BIA and our sister circuits.  The current version of the INA deems a lawful permanent resident, who leaves the United States and then returns, to be "seeking admission" if that person fits within any of the six categories enumerated in 8 U.S.C. § 1101(a)(13)(C).  The purpose, duration, and nature of the LPR's departure from the United States — the elements of the Fleuti doctrine — are irrelevant to the legal determination of whether she must undergo the admission process upon her return.  Although we find the statute plain on its face, the same result would obtain if we thought the statute unclear.  We would then defer to the agency's reasonable interpretation.  See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984).  Therefore, the IJ did not err in deciding that de

Vega could not rely on the Fleuti doctrine to mitigate the consequences of her departure from the country.

Second, de Vega claims that she was not convicted of an aggravated felony, and thus the IJ erred in finding her ineligible for cancellation of removal, a form of relief available only to LPRs who have not been convicted of such a crime. See 8 U.S.C. § 1229b(a)(3) (stating that the Attorney General may grant cancellation of removal only if the alien "has not been convicted of any aggravated felony"). She contends that there was no conviction at all, and, alternatively, that if there were a conviction, it was not for an aggravated felony.

We think it clear that de Vega was convicted within the meaning of the INA. IIRIRA specifies the criteria necessary for a conviction:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where — (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Id. § 1101(a)(48)(A). There is no dispute that she admitted to facts sufficient for a finding of guilt. However, she claims that the order requiring her to pay restitution did not constitute a form of "punishment, penalty, or restraint on [her] liberty." Id.

-8-

Although the IJ and the BIA implicitly rejected de Vega's argument on this point, neither provided an explanation. We conclude that the particular order in this case was plainly a punishment or penalty. De Vega was required to pay a large sum of money. If she failed to make her payments, her admission could ripen into a guilty plea and she would be subject to further punishment. See Commonwealth v. Aboulmal, No. 02-P-830, 2003 WL 22309058, at *2 (Mass. App. Ct.) ("An admission to sufficient facts may result . . . in a continuance without a finding to a specific date, conditioned on compliance with specific terms. In the event of a violation of those terms, the 'admission' remains and may ripen into an adjudication of guilt and imposition of sentence."). Under Massachusetts law, therefore, a continuation, based on an admission of facts sufficient for a finding of guilt and conditioned on payment of restitution, is treated as the legal equivalent of a guilty plea and probationary sentence. Id. (citing Commonwealth v. Villalobos, 777 N.E.2d 116, 119-20 (Mass. 2002)). Based on the facts of this case and Massachusetts law, we conclude that the restitution order was punitive, and we find no error in the agency's conclusion that, under the INA definition, de Vega was convicted.

De Vega claims, alternatively, that her conviction was not for an "aggravated felony," 8 U.S.C. § 1101(a)(43). The IJ found that de Vega's false representation to the Massachusetts

Department of Public Welfare amounted to an aggravated felony, under IIRIRA, because it was "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," id. § 1101(a)(43)(M).[2]  There was no dispute that fraud was a necessary element of the offense; additionally, the IJ found that the victim lost more than $10,000 because the restitution ordered was over $27,000, thereby creating the inference that de Vega's misrepresentations caused losses of that amount.  The IJ noted that the restitution was technically imposed in response to the larceny charge, which the IJ found not to be an aggravated felony, but held that the distinction was immaterial because the two charges were "coterminous in terms of the dates of occurrence on the complaint form" and the sentence imposed "relate[d] clearly to both counts."

De Vega argues that the false representation charge cannot amount to an aggravated felony because there is insufficient evidence that the victim of her false representations suffered

_____

[2] De Vega was convicted under Mass. Gen. Laws ch. 18, § 5B, which states:

> Any person [who] knowingly makes a false representation or, contrary to a legal duty to do so, knowingly fails to disclose any material fact affecting eligibility or level of benefits to the department of public welfare or its agents, for the purpose of causing any person, including the person making such representations, to be supported in whole or in part by the commonwealth, or for the purpose of procuring a payment under any assistance program administered by the department, shall be punished by a fine of not less than two hundred nor more than five hundred dollars or by imprisonment for not more than one year.

losses in excess of $10,000. She says that the restitution order can only be "attributed" to the larceny charge, and thus there was no single conviction based on fraud that resulted in the requisite amount of loss.

We have previously held that the government meets its burden when "the record of conviction," which includes "an official record of plea," Conteh v. Gonzales, 461 F.3d 45, 57 (1st Cir. 2006), provides clear and convincing evidence that the alien's conviction "involved a loss to victim(s) of more than $10,000," id. at 60 (emphasis added). The IJ in this case found that the false representation conviction "involved" losses of the requisite amount, and we owe substantial deference to that factual finding, see Hoxha, 446 F.3d at 216.

The IJ's finding was based on evidence in the record of conviction that a single course of conduct underlay both charges. In other words, de Vega engaged in a single scheme, resulting in two separate criminal charges, which caused the victim to lose over $27,000. The IJ noted, in reaching this decision, that one complaint charged both crimes and the two crimes appear to have occurred during the same dates. On the Tender of Plea agreement, the defendant submitted her recommendations for the terms of her plea. She included a bracket symbol around her two recommendations, suggesting that the terms of the plea could be read as a whole rather than piecemeal. Furthermore, she suggested

restitution for the larceny charge, but also proposed, specifically as to the false representation charge, that the sentence be "subject to continuation of restitution not paid" and that "restitution to be determined based upon Probation [Office]'s determination of her ability to pay." This notation, made on behalf of defendant by her counsel, strongly supports the IJ's inference that the two charges were factually interrelated and that the restitution order reflected the total loss to the victim.

The Tender of Plea form also included the judge's final decision as to the appropriate sentence. While de Vega made discrete (though overlapping) recommendations for the two charges, the judge imposed a single sentence without any separation or distinction between the two charges. Nothing in the record suggests that the loss was the result only of the larceny and not of the false representations; rather, the record demonstrates that the losses suffered by Massachusetts were the result of one course of conduct that gave rise to two interrelated charges.

We conclude that the evidence contained in the record clearly and convincingly supports the IJ's finding that de Vega was convicted of a crime, false representations, for which fraud was a necessary element, that involved losses to the victim of more than $10,000, amounting to an aggravated felony. Therefore, the denial of her petition for cancellation of removal was justified.

**Petition denied.**