# United States Court of Appeals

## For the First Circuit

No. 08-1550

BERNARDO NADAL-GINARD,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*]
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Siler,[**] and Howard, <u>Circuit Judges</u>.

<u>Ilana Etkin Greenstein</u>, <u>Harvey Kaplan</u>, <u>Jeremiah Friedman</u>, <u>Maureen O'Sullivan</u>, <u>Jeanette Kain</u> and <u>Kaplan, O'Sullivan & Friedman, LLP</u>, on brief for petitioner.
<u>Gregory G. Katsas</u>, Assistant Attorney General, Civil Division, <u>Mary Jane Candaux</u>, Assistant Director and <u>Michael C. Heyse</u>, Attorney, Office of Immigration Litigation, United States Department of Justice, Civil Division,, on brief for respondent.

February 25, 2009

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. is automatically substituted for former Attorney General Michael B. Mukasey as the respondent herein.

[**]Of the Sixth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**. Petitioner Bernardo Nadal-Ginard seeks review of the Board of Immigration Appeals' ("BIA") decision denying his motion to terminate removal proceedings, and upholding the Immigration Judge's decision to pretermit his application for a waiver of inadmissibility under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c). Discerning no legal or factual error in the BIA's decision, we deny the petition.

## I. BACKGROUND

Nadal-Ginard is a native of Spain who became a lawful permanent resident of the United States in 1976. In 1995, his successful medical career in this country was derailed when a jury convicted him of four counts of larceny of more than $250 for misappropriating funds from Boston Children's Heart Foundation ("BCHF"), a non-profit corporation organized to serve Boston Children's Hospital. He was subsequently sentenced to three to five years in prison for one count and one year each for the remaining three counts.[1] He was also stripped of his medical license and found liable to BCHF in federal civil proceedings for

---

[1] Nadal-Ginard eventually served nine months' incarceration, completed probation and community service, and was discharged from court supervision in November 2000.

more than $6.5 million, see Boston Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 432, 443 (1st Cir. 1996).

Shortly after his conviction, Nadal-Ginard traveled abroad at least twice to visit his ailing mother:  once in June 1996, and again in January 1997.  Despite his prior convictions, which rendered him inadmissible unless he obtained discretionary relief from the government under statutory provisions in force at the time, he reentered the United States without incident at the conclusion of each trip.

In 2004, Nadal-Ginard again traveled abroad and again attempted to reenter the country, presenting a foreign passport and his permanent resident alien card ("greencard") to the examining officer for inspection.  This time, however, the Department of Homeland Security ("DHS") denied him admission on the basis that he was an arriving alien who had been convicted of crimes involving moral turpitude punishable by five or more years imprisonment in aggregate.  The DHS subsequently charged him, explicitly as a native and citizen of Spain, with inadmissibility under the relevant provisions of the Immigration and Nationality Act ("INA"), sections 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and 212(a)(2)(B), 8 U.S.C. § 1182(a)(2)(B).[2]

---

[2]Nadal-Ginard does not dispute that his convictions were for crimes involving moral turpitude for which the aggregate sentences to confinement were five years or more, and which, if his alienage was established, render him inadmissible to and removable from the United States.  See 8 U.S.C. § 1182(a)(2).

During his removal hearings in front of an Immigration Judge ("IJ"), Nadal-Ginard raised two arguments relevant to this petition. First, he argued that the DHS had failed to produce competent evidence of his alienage, and therefore the IJ lacked jurisdiction over the removal proceedings. He admitted that he had presented a foreign passport and a greencard to the immigration official when he attempted his reentry, but he asserted that it was the government's burden to establish his alienage, and that the government's proof was inadequate to do so. The government resisted both of these propositions, maintaining that the burden fell to Nadal-Ginard, as a convicted felon, to prove his citizenship, and relying on Nadal-Ginard's passport as adequate evidence of alienage. The IJ agreed with the government, finding that Nadal-Ginard's passport and greencard constituted sufficient evidence of alienage to establish jurisdiction.

Second, Nadal-Ginard argued to the IJ that he should be allowed to apply for discretionary relief from removal under the former INA § 212(c), which at the time of his 1996 readmission to the country would have permitted him to make such an application, but which was repealed before his 2004 travel and subsequent removal hearings.[3] Nadal-Ginard asserted that he had relied on the

_____

[3]The former § 212(c) granted the Attorney General broad discretion to terminate deportation proceedings against an excludable alien. For decades, the class of aliens eligible for such relief included aliens ordered excludable or deportable because of multiple convictions involving crimes of moral turpitude. Beginning in 1990, however, Congress imposed new limitations on this relief.

continued availability of § 212(c) relief when he decided to pursue a jury trial, and therefore he should be excused from the retroactive application of its repeal. Finding no evidence in the record of any such reliance, the IJ denied the request. The IJ eventually found Nadal-Ginard removable as charged and pretermitted his applications for cancellation of removal and a waiver of inadmissibility.

On appeal, the BIA affirmed in a separate written opinion. In response to Nadal-Ginard's renewed argument that his alienage had not been established, the BIA explicitly found that Nadal-Ginard was a lawful permanent resident who, because of his convictions, was correctly categorized as an arriving alien. It further held that, because he was an arriving alien, Nadal-Ginard bore the burden of proving his admissibility, and it rejected

---

Among them, it passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") in April 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), effective April 24, 1996, and in so doing identified certain offenses for which convictions would preclude discretionary relief from deportation proceedings (but not exclusion proceedings), including, inter alia, the offenses of which Nadal-Ginard was convicted. Later that year, on September 30, Congress repealed § 212(c) and replaced it with § 304(b) of the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which created a new form of discretionary relief called cancellation of removal. 8 U.S.C. § 1229b. This new relief gave the Attorney General authority to cancel removal for a narrow class of inadmissible or deportable aliens; the narrow class does not include aliens convicted of multiple crimes involving moral turpitude. INS v. St. Cyr, 533 U.S. 289, 294-97 & n.7 (2001). Nadal-Ginard's overseas travel in June 1996 fell in between the effective dates of AEDPA and IIRIRA, and therefore, at that time, Nadal-Ginard would have been eligible for discretionary relief from exclusion proceedings but not from removal proceedings.

Nadal-Ginard's assertion that the government bore the burden of establishing his alienage. Finally, the BIA concluded that Nadal-Ginard had failed to establish that he was entitled to be admitted to the United States because he presented no "reliable evidence" of U.S. citizenship and had not "shown that his Spanish passport confers anything less than full nationality and citizenship of Spain."

The BIA further held that Nadal-Ginard had not established his eligibility to apply for § 212(c) relief. Citing INS v. St. Cyr, 533 U.S. 289 (2001), and Dias v. INS, 311 F.3d 456 (1st Cir. 2002), the BIA reasoned that because his convictions were obtained after trial rather than by plea agreements, Nadal-Ginard was subject to the retroactive application of § 212(c)'s repeal. The BIA additionally rejected Nadal-Ginard's argument that he should be allowed to apply for § 212(c) relief nunc pro tunc to the date of his first post-conviction admission into the United States, an admission which he characterized as contrary to law and having the effect of denying him the opportunity to apply for discretionary relief. The BIA held that it "lack[ed] jurisdiction" to interfere with what it characterized as the DHS's "prosecutorial discretion to decide if and when to commence removal proceedings against aliens," but it also considered the merits of Nadal-Ginard's argument and found that Nadal-Ginard had failed to

"demonstrate any basis for seeking nunc pro tunc relief under section 212(c)."  This petition for review followed.


## II.  LEGAL STANDARDS

We have jurisdiction over the petition pursuant to INA § 242(a)(1)(A), 8 U.S.C. § 1252(a)(1), which provides for review of final orders of removal, and INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D), which provides for circuit courts' review of legal and constitutional questions even if otherwise barred by the jurisdiction-stripping provisions of INA § 242(a)(2)(B), (C).

When the BIA issues its own opinion affirming an immigration judge's decision, we focus on the Board's decision. Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008) (citing Stroni v. Gonzales, 454 F.3d 82, 86 (1st Cir. 2006)).  We review constitutional questions and questions of law de novo. Mekhoukh v. Ashcroft, 358 F.3d 118, 129 (1st Cir. 2004).  We typically give deference to the DHS's construction of the INA, which the agency administers.  INS v. Aquirre-Aquirre, 526 U.S. 415, 424-25 (1999); Lattab v. Ashcroft, 384 F.3d 8, 17 (1st Cir. 2004); Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  However, when the Court reviews the retroactive application of a statute, it does not afford the agency's interpretation any deference.  St. Cyr, 533 U.S. at 320 n.45.

## III.  DISCUSSION

### A.  Nadal-Ginard's Alienage and the BIA's Jurisdiction

Nadal-Ginard's first argument to us is that the government failed to establish his alienage during the administrative proceedings, and therefore the BIA lacked jurisdiction.  His attack is two-fold:  he argues that the BIA erred as a matter of law in holding that the DHS did not bear the burden of establishing that he is an alien, and that the evidence in the record showing alienage is insufficient to establish his present alienage.  We disagree.

### 1.  The Burden of Establishing Alienage

As to the burden of establishing alienage, Nadal-Ginard concedes that, if his alienage had been established, he would have borne the burden of proving his admissibility to the United States. He argues, however, that the BIA erred by expecting him to shoulder that burden without first requiring reliable evidence of alienage from the government.

On the contrary, the BIA properly treated Nadal-Ginard as an arriving alien and made no error of law in exerting jurisdiction over him.  All persons attempting to enter the United States must apply in person to an immigration officer at a port-of-entry.  8 C.F.R. § 1235.1(a).  "A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction," and if such person "fails to satisfy the examining immigration officer

that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien." 8 C.F.R. § 1235.1(b). And, as the BIA properly noted, an alien who is an applicant for admission has the burden of establishing that he "is clearly and beyond doubt entitled to be admitted and is not inadmissible under section [212 of the INA]." 8 U.S.C. § 1229a(c)(2)(A); see also 8 C.F.R. § 1240.8(b) (an arriving alien "must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged").

Moreover, even though an alien lawfully admitted for permanent residence is not normally regarded as seeking admission into the United States for purposes of the immigration laws, 8 U.S.C. § 1101(a)(13)(C), an exception to that rule exists for an alien who, like Nadal-Ginard, has committed multiple crimes involving moral turpitude (other than purely political offenses) for which the aggregate sentences to confinement were five years or more. Under such circumstances, that alien must be regarded as seeking admission and deemed inadmissible. 8 U.S.C. § 1101(a)(13)(C)(v) ("An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . has committed an offense identified in section 1182(a)(2) of this title . . . ."); 8 U.S.C. § 1182(a)(2)(A)-(B) (listing categories of aliens who are

inadmissible, including those who have been convicted of a crime involving moral turpitude (other than a purely political offense) after the age of eighteen where the maximum possible penalty exceeded one year's imprisonment, and those who have been convicted of two or more offenses (other than purely political offenses), regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were five years or more); see also De Vega v. Gonzales, 503 F.3d 45, 47-48 (1st Cir. 2007) (denying a lawful permanent resident's petition for review where the petitioner had been charged as an arriving alien and found inadmissible based on a prior conviction for a crime involving moral turpitude).

It is undisputed that when Nadal-Ginard applied for admission to the United States, he presented a foreign passport and his greencard, and that he did not otherwise claim United States citizenship. That this application did not satisfy the examining officer of Nadal-Ginard's U.S. citizenship -- if that is what the documents were intended to do -- is unsurprising: nothing about a foreign passport and a greencard could alert an examining officer to a person's U.S. citizenship, or even to a claim of citizenship. Moreover, and as discussed in further detail below, the passport and greencard were introduced as evidence of alienage at the removal hearing and were never rebutted with reliable contradicting evidence. These documents, which both the BIA and the IJ relied

upon as evidence of alienage, were undoubtedly enough to make out the adequate prima facie case of alienage referred to in our case law. See, e.g., Navia-Duran v. INS, 568 F.2d 803, 811 (1977); Sint v. INS, 500 F.2d 120, 123-24 (1st Cir. 1974) (Campbell, J., concurring). Accordingly, the BIA made no error of law when it concluded that Nadal-Ginard was a lawful permanent resident who, because of his prior convictions, was properly treated as an arriving alien bearing the burden of proving admissibility.

## 2.  The Evidence of Alienage

Nadal-Ginard's alternative argument attacks the documents the BIA relied upon in reaching its alienage conclusion, specifically, his passport, greencard, and customs declaration. In particular, he argues that the photocopies of his passport and his customs declaration card were not translated into English, and that the photocopies of his passport and greencard are "largely illegible."

These arguments are unpersuasive. The greencard, combined with Nadal-Ginard's prior convictions, provided compelling evidence supporting the DHS's decision to inspect him as an alien for purposes of admissibility. This is especially so given that the record contains no other claim of citizenship. While it is true that the BIA did not explicitly rely on the greencard as evidence of alienage in its decision, "[t]he law is pellucid that 'each piece of evidence need not be discussed in a decision,'"

-11-

<u>Pulisir</u>, 524 F.3d at 310 (<u>quoting</u> <u>Morales</u> v. <u>INS</u>, 208 F.3d 323, 328 (1st Cir. 2000)), and the BIA's opinion is clear in recognizing his status as a lawful permanent resident, evidence of which was his greencard.

Additionally, the passport, which Nadal-Ginard acknowledges to be foreign and which was explicitly mentioned in the BIA's decision, provided further evidence of Nadal-Ginard's alienage. It is true that foreign language documents are normally required to be accompanied by an English translation, 8 C.F.R. § 1003.33, and that illegible documents are often useless. In this case, however, the fact that the relevant evidence was not translated or entirely legible did not preclude it from the IJ's or BIA's consideration under the circumstances. The evidentiary significance of each document was facially apparent to the adjudicators, and there was no question as to the authenticity of the documents: the greencard bore Nadal-Ginard's name and photograph, and there was no direct evidence offered to show that his status had changed; similarly, the passport bore Nadal-Ginard's name and photograph, and was clearly and admittedly not issued by the United States. <u>See</u> <u>United States</u> v. <u>Diaz</u>, 519 F.3d 56, 64 (1st Cir. 2008) (no plain error in a criminal case where untranslated foreign language documents, including a passport, were admitted under the Federal Rules of Evidence because the "evidentiary significance was facially apparent"); <u>Toure</u> v. <u>Ashcroft</u>, 400 F.3d

-12-

44, 48 (1st Cir. 2005) ("[T]he Federal Rules of Evidence do not apply in INS proceedings," rather, "'the less rigid constraints of due process impose outer limits based on considerations of fairness and reliability.'") (quoting Yongo v. INS, 355 F.3d 27, 30 (1st Cir. 2004)).  The BIA therefore did not err in considering the government's evidence of alienage.[4]

As to the sufficiency of that evidence, although the government has not explicitly argued the point, we are doubtful of our jurisdiction to consider the evidence of alienage in this case, as Nadal-Ginard's prior convictions appear to bring him within the ambit of the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(C).  In any event, we note that at no point did Nadal-Ginard offer the IJ or BIA any evidence capable of casting a reasonable doubt upon the examining officer's decision to inspect him as an alien, or upon the government's evidence.  Moreover, evidence Nadal-Ginard adduced during his administrative hearings tended to support the examining officer's actions and the government's evidence of alienage.  Specifically, his marriage license lists his place of birth as Arta, Spain, and we have held that an individual born abroad is presumed to be an alien and bears

---

[4]We also find unpersuasive Nadal-Ginard's argument, relying on Sint, 500 F.2d 120, that the BIA erred in accepting the government's evidence as proof of current citizenship.  In Sint, the record did not contain a foreign passport or a greencard. Id. at 122-23.  Additionally, we emphasize that at no point has Nadal-Ginard explicitly claimed, or offered any proof, that he has been naturalized.

the burden of rebutting that presumption by a fair preponderance of the evidence.  Leal Santos v. Mukasey, 516 F.3d 1, 4 (1st Cir. 2008).  The record offers no support for the conclusion that Nadal-Ginard carried that burden.[5]  We therefore have no basis to upset the BIA's factual finding that Nadal-Ginard was an alien for purposes of his removal hearings.  See 8 U.S.C. § 1252(b)(4)(B) (administrative findings of fact are conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary").

### B.  Nadal-Ginard's Eligibility for Relief under § 212(c)

Nadal-Ginard's second argument is that he should have been permitted to apply for § 212(c) relief nunc pro tunc to June 1996, the date of his first post-conviction admission to the United States.  Nadal-Ginard contends that this admission was contrary to law because his prior convictions should have rendered him excludable.  He argues that, had he been denied admission at that time, he would have applied for § 212(c) relief; instead, because he was not denied admission until after § 212(c) was repealed, he

---

[5]Nadal-Ginard's reliance on a letter he proffered from the Counsel for Judicial Affairs at the Embassy of Spain is misplaced.  That said, the letter is simply too speculative and inconclusive to support Nadal-Ginard's argument.  It states that Nadal-Ginard's "daughters maintain that the process of acquiring [United States] citizenship did not get to be finalized," but then relies on "the concreteness of . . . information provided by our contact in [the Spanish Immigration Service]" to conclude that the daughters' report is "quite doubtful."  We agree with the BIA's determination that this letter does not provide "reliable evidence" as to Nadal-Ginard's U.S. citizenship.

has been wrongly deprived of his opportunity to seek that relief. Alternatively, Nadal-Ginard argues that the abolition of § 212(c) had an impermissible retroactive effect under St. Cyr, 533 U.S. 289, and that we should therefore allow him to apply for that relief. Neither of these arguments is persuasive.

### 1. Section 212(c) Relief Nunc Pro Tunc

Nadal-Ginard's principal authority for his nunc pro tunc argument is Matter of L-, 1 I. & N. Dec. 1 (A.G. 1940). In Matter of L-, a petitioner who had previously been convicted of larceny left the country and was erroneously admitted upon his return when the examining officer failed to ask about, and the petitioner failed to mention, the prior conviction, which should have rendered him excludable from the country. Apparently realizing its error, the government issued an arrest warrant against the petitioner and commenced deportation proceedings four months later. Under the laws in place at the time, had the petitioner been excluded, he could have applied for discretionary relief; because he had been admitted, he could not. During the deportation proceedings, the petitioner therefore requested the opportunity to apply for discretionary relief from exclusion nunc pro tunc to the time of his erroneous admission, arguing that the government's mistake in not excluding him had deprived him of the opportunity to avail himself of the discretionary relief. The petitioner was eventually

-15-

granted the opportunity to apply out of time, and he ultimately received the discretionary relief he desired.

Despite the obvious factual similarities between the instant case and Matter of L-, the cases are distinguishable in two material and ultimately dispositive ways. First, the Matter of L- decision explicitly relied on the relatively inconsequential nature of the petitioner's prior offense, describing it as "in no way aggravated." Id. at 2. The decision noted that the prior offense involved a single incident of stealing a watch approximately sixteen years before the deportation proceedings began, and that the petitioner was not imprisoned for his actions. Id. at 1-2. In contrast, Nadal-Ginard's prior convictions resulted in a multi-year prison sentence, the loss of his professional license, and a civil judgment against him totaling more than six million dollars. Second, the deportation proceedings in Matter of L- were initiated against the petitioner while the petitioner was in the United States, and they appeared to represent the government's attempt to correct its error in admitting him earlier the same year. Except to the extent that he failed to alert the examining officer to his prior conviction when he reentered the country, the petitioner in Matter of L- at no point tempted fate by taking an action that he knew or should have known would render him excludable or deportable without the statutory right to apply for discretionary relief. Nadal-Ginard, on the other hand, chose to leave the country and

-16-

return in 2004 despite the fact that, at that time, doing so would clearly render him inadmissible without a statutory right to § 212(c) relief. In this way, Nadal-Ginard's decision to leave the country in 2004 constituted a more brazen gamble than the relatively minor oversights that contributed to the Matter of L-petitioner's erroneous readmission. These two differences between the cases -- the nature and extent of the petitioners' respective prior wrongdoing, and the circumstances leading to the petitioners' respective removal and deportation proceedings -- put Nadal-Ginard in a materially different position from that of the petitioner in Matter of L-.

Granting a request to apply for § 212(c) nunc pro tunc has been said to be a matter of equity. See Fernandes Pereira v. Gonzales, 417 F.3d 38, 43 & n.4 (1st Cir. 2005) (describing a request to apply for § 212(c) relief nunc pro tunc as an "equitable argument"); see also Fernandes Pereira v. Gonzales, 436 F.3d 11, 11 (1st Cir. 2006) (Lipez, J., dissenting) (describing nunc pro tunc relief as "equitable relief"). Based on the record and the petitioner's cited authorities, the equities in this case are not compelling enough to grant Nadal-Ginard's request to apply for § 212(c) relief out of time. We therefore will not upset the BIA's finding that Nadal-Ginard did not demonstrate a proper basis for seeking the unusual remedy of a nunc pro tunc application for

relief under former § 212(c).  See Fernandes Pereira v. Gonzales, 417 F.3d at 47.[6]

### 2. Retroactive Application of § 212(c)'s Repeal

Nadal-Ginard's argument that the repeal of § 212(c) relief had an impermissible retroactive effect is similarly unavailing, for the reason offered by the BIA:  Nadal-Ginard was convicted following a jury trial, and therefore does not fall within the ambit of St. Cyr, which specifically focused on the reliance interests of those aliens who entered plea agreements when § 212(c) relief was available to them.

This issue is controlled by Dias v. INS, 311 F.3d 456 (1st Cir. 2002).  In Dias, we considered whether the 1996 restriction and repeal of § 212(c) had an impermissible retroactive effect on an alien who had been convicted after a trial in 1995. In our discussion of St. Cyr, we noted that "the potential for unfairness to one who pled guilty in reliance on immigration law as

---

[6]We therefore need not reach the BIA's other rationale for its decision, namely, that it lacked jurisdiction over the DHS's exercise of prosecutorial discretion.  If this finding constituted error -- and we take no position on that issue -- there was no prejudice.  See 5 U.S.C. § 706 (when reviewing agency action, "due account shall be taken of the rule of prejudicial error"); see also, e.g., Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 127 S. Ct. 2518, 2530, ___ U.S. ___ (2007); PDK Labs., Inc. v. United States Drug Enforcement Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule . . . ."); Kadia v. Gonzales, 501 F.3d 817, 821 (7th Cir. 2007) ("[T]he doctrine of harmless error is applicable to judicial review of immigration decisions . . . .").

-18-

it existed at the time of the plea would be significant if the [restrictions on § 212(c) relief] were applied retroactively," but we contrasted that situation with alien criminal defendants who chose to go to trial prior to the change in immigration law, finding that such defendants "were not relying on immigration law as it existed at the time in making that decision." Dias, 311 F.3d at 458. We therefore rejected the alien's appeal, holding that "application of the new statutory limitations on discretionary relief does not have an impermissible retroactive effect on those aliens who would have been eligible for discretionary relief when they were convicted of a felony after trial."[7] Id.

Just like the appellant in Dias, Nadal-Ginard proceeded to trial, and he has made no showing that the continued availability of § 212(c) factored into that decision.[8]

---

[7] We note, as did the BIA, that this result is consistent with the regulations implementing § 212(c), which explicitly allow special motions to seek § 212(c) relief by aliens whose convictions were "obtained by plea agreements reached prior to a verdict at trial prior to April 1, 1997," and which include the explicit limitation, "This section is not applicable with respect to any conviction entered after trial." 8 C.F.R. § 1003.44(a).

[8] Even if there may be situations where a petitioner's actions after trial demonstrate reliance on the continued availability of § 212(c) relief, see e.g., Carranza de Salinas v. Gonzales, 477 F.3d 200 (5th Cir. 2007); Hem v. Maurer, 458 F.3d 1185 (10th Cir. 2006), the record contains no evidence of such reliance. At a hearing held July 27, 2005, the IJ invited Nadal-Ginard to submit an affidavit in support of his reliance argument, but according to the record, no such affidavit was filed in the ten months between that hearing and the IJ's May 2006 decision.

-19-

Finally, we do not reach Nadal-Ginard's argument, relying on Hem, 458 F.3d 1185, that we should adopt an "objective potential reliance standard" for purposes of our retroactivity analysis. As explained above, under Dias, the repeal of § 212(c) applies to Nadal-Ginard, and we are bound by the law of the circuit doctrine. Gonzalez-Mesias v. Mukasey, 529 F.3d 62, 65 (1st Cir. 2008) (describing the doctrine as "'hold[ing] prior panel decision inviolate absent either the occurrence of a controlling intervening event (e.g., a Supreme Court opinion on the point; a ruling of the circuit, sitting en banc; or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course'") (quoting United States v. Chhien, 266 F.3d 1, 11 (1st Cir. 2001)). But even were Dias not dispositive of this issue, Nadal-Ginard's argument would still fail, as the record contains no reliable indication that he based or might have based any decision made prior to the repeal of § 212(c) on the continued availability of discretionary relief, nor does it contain any reliable indication that any such decision would have been reasonable. See supra note 8; cf. Hem, 458 F.3d at 1199, 1200-01 (petitioner decided to forgo appeal of his aggravated assault conviction because a new trial could have resulted in a sentence making him ineligible for § 212(c) relief); Ponnapula v. Ashcroft, 373 F.3d 480, 484, 497 (3d Cir. 2004) (petitioner's decision to reject plea and proceed to trial deemed reasonable

where the decision was premised on his counsel's advice regarding petitioner's continued eligibility for discretionary relief, and where the uncontradicted facts demonstrated that petitioner's "minor and essentially unknowing" conduct was unlikely to render him ineligible for § 212(c) relief).

Nadal-Ginard's petition for review is therefore **DENIED**.