RENDELL, Circuit Judge
concurring in part and dissenting in part.
I.
I agree with the majority’s rulings on most of the issues in this appeal, including its decision to affirm the BIA’s denial of Rodov’s application for asylum and withholding of removal, and to remand the case to the immigration judge to decide whether Rodov is entitled to protection under the Convention Against Torture. In particular, I agree with the majority’s analysis of the statutory provisions governing the timing of the immigration officials’ determination of whether a returning lawful permanent resident (“LPR”) has “committed” an offense. However, I cannot agree with the majority’s view as to what that determination should be based on. The majority concludes that, for the purposes of 8 U.S.C. § 1101(a)(13)(C)(v), the mere existence of an arrest warrant was sufficient to establish that Rodov had “committed” the relevant offense. In so concluding, the majority disregards the true meaning of the term, “committed,” and improperly lowers the bar regarding the evidence needed for officials at the point of entry to find that Rodov “committed” a crime.[1] This is a significant issue of first impression and an important one for returning LPRs. While probable cause for an arrest warrant may be sufficient to show the likelihood of commission, it does not provide any proof whatsoever that the alien has indeed committed an offense. I think that more is required to establish commission under 8 U.S.C. § 1101(a)(13)(C)(v) than probable cause to believe an alien has committed an offense. Therefore, I respectfully dissent in part from the majority’s opinion.
Given this,' I would reason through the analysis as follows. First, it was improper for the Government to regard Rodov as an applicant for admission at the time he sought reentry because, at that point, there was no evidence whatsoever — and no admission by Rodov — that he had “committed” an offense listed in § 1182(a)(2). Thus, under § 1101(a)(13)(C), Rodov, an “alien lawfully admitted for permanent residence,” should not have been regarded as an “applicant for admission” when he reentered the United States in 2007, and should not have been paroled. If Rodov was not seeking admission, then, under 8 U.S.C. § 1227, he should have been permitted to enter as an LPR.
In order to remove him from the country, the Government would have to show that he was deportable for a reason other than “inadmissibility] at the time of entry *278 or of adjustment of status.” 8 U.S.C. § 1227(a)(1). After Rodov was convicted of aiding and abetting wire fraud in January 2009, the DHS could have issued a Notice to Appear (“NTA”) charging him as an LPR who was deportable under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that “[a]ny alien convicted of an aggravated felony at any time after admission is deportable.” The DHS did properly find that, because Rodov’s crime constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), he was not statutorily eligible for cancellation of removal. Accordingly, were DHS to bring deportation proceedings against him, it would most likely determine him to be deportable. However, he cannot be excluded as inadmissible.
For the reasons set forth below, however, I disagree with respect to the majority’s holding as to the threshold issue it addresses, namely, whether officials at the point of entry had a sufficient basis for concluding that he had committed an offense under 8 U.S.C. § 1101(a)(13)(C)(v). I suggest that they did not.
II.
As the majority explains, 8 U.S.C. § 1101(a)(13)(C)(v) states that a returning LPR who has “committed” a crime identified in § 1182(a)(2), including a crime involving moral turpitude, should be considered an applicant for admission and thus subject to the various grounds of inadmissibility included in 8 U.S.C. § 1182. Under the majority’s reading, the determination that a returning LPR has “committed” a crime of moral turpitude can be based on the entry officials’ knowledge that there is an outstanding arrest warrant charging him with such a crime. Because of the lack of existing caselaw on this issue, the majority establishes this as a “matter of federal common law.” (Maj. Op. 272). See Cunningham v. R.R. Ret. Bd., 392 F.3d 567, 575 (3d Cir.2004) (“A federal court has the power to declare, as a matter of common law or judicial legislation, rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in large by Congress.”) (internal citation and quotation marks omitted) (quoted in Maj. Op. 272). In sua sponte setting forth a rule as to the sufficiency of the evidence for a finding that someone has “committed” a crime under subsection (v), the majority does little more than ruminate on what standard it thinks is the most fair. As the majority itself acknowledges, its reading of subsection (v) assigns the immigration officer stationed at an LPR’s point of arrival responsibility for determining whether the alien should be stripped of his LPR status and treated as an applicant for admission, or should be admitted and processed as an LPR.[2] The lack of due process in such a system,[3] the majority asserts, calls for a lower burden of proof in determining whether an LPR has “committed” a crime. Not too low, however, because “[gjeneral due process principles ... counsel that something more than an immigration officer’s say-so *279 must be required.” (Maj. Op. 272). Striking a compromise between two extremes — a conviction requirement, on the one hand, and an immigration officer’s independent assessment, on the other — the majority settles on probable cause as the appropriate standard.[4]
Neither the majority, nor the BIA in the opinion from which Rodov has appealed, offers support for the conclusion that the existence of an arrest warrant, presumably based on probable cause, is sufficient to establish “commission” of a crime for the purposes of subsection (v). While the majority is correct that other Courts of Appeals have not addressed this exact question, I do not think that the absence of precise authority on the question merits our formulation of a new, substantive rule of federal common law. See Carley v. Wheeled Coach, 991 F.2d 1117, 1128-29 (3d Cir.1993) (noting the “well-established principle that rules of federal common law should be narrowly drawn and imposed only in rare circumstances where there is a ‘significant conflict’ between a federal interest and the application of state law”); Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (“Absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.”).
Not only is the promulgation of such a rule uncalled for, it is actually in conflict with relevant authority as to what is necessary to prove “commission” of an offense. Existing easelaw supports the view that more than just probable cause is needed to find that an alien or LPR has “committed” an offense. See De Vega v. Gonzales, 503 F.3d 45, 47 (1st Cir.2007) (“The relevant category for this case covers LPRs who have ‘committed an offense identified in section 1182(a)(2),’ meaning those LPRs who have been convicted of, ‘or who ad-mitt ] having committed, or who admit[ ] committing acts which constitute the essential elements of,’ a crime involving moral turpitude.”) (internal citations omitted).[5]
*280 The majority correctly draws attention to the choice of the word “committed,” instead of “convicted,” in subsection (v); clearly, “commission” of an offense includes a broader category of acts than only “conviction.” However, as De Vega suggests, it is reasonable to read § 1101(a)(13)(C)(v)’s language — “committed an offense identified in section 1182(a)(2)” — as encompassing the behavior specifically identified in § 1182(a)(2)(A)(i)(I): conviction of, admission of committing, or admission of committing essential elements of, a crime involving moral turpitude. See De Vega, 503 F.3d at 47. It makes sense to use “committed” rather than “convicted” in order to include offenses for which aliens have not been convicted, but which they have admitted to committing.
The use, and interpretation in the case-law, of the word “committed” in sentencing statutes also supports this reading. When sentencing statutes use the word “committed,” we are to consider not only the elements of the offense but also underlying facts and conduct to see if they establish, by a preponderance of the evidence, that defendant committed an offense, even if he was not convicted for that offense. In United States v. Mi Kyung Byun, 539 F.3d 982 (9th Cir.2008), for example, the court was called on to interpret 18 U.S.C. § 2423, which criminalizes transportation of minors with intent to engage in criminal sexual activity, focusing on the phrase, “when committed against a minor.” Id. at 985 (quoting 18 U.S.C. § 2423) (emphasis added). The Ninth Circuit explained that the “use of the word ‘committed,’ rather than ‘convicted’ persuasively indicates that, in determining whether the victim of Byun’s crime was a minor, we may consider not only the elements of the crime of which Byun was convicted but her actual conduct.” Id. at 991. See also Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (noting that the use of “convicted” instead of “committed” in 18 U.S.C. § 924, which provides a sentencing enhancement for a defendant convicted of unlawful possession who has three prior convictions for violent felonies, indicates that Congress intended the sentencing court to look to the crimes for which defendant was convicted, “not to the facts underlying the prior convictions.”).
In United States v. Charlesworth, 217 F.3d 1155, 1159-60 (9th Cir.2000), the Ninth Circuit addressed the question of whether a sentencing judge properly denied the four-level reduction in U.S.S.G. § 2P1.1, which provides penalties for escape and instigating or assisting escape from a prison, based on evidence that a defendant “committed” a felony. The Ninth Circuit, noting that the term “committed” should be given its plain meaning, explained that the “use of the word ‘committed’ ... suggests that neither a conviction for a felony nor even an indictment is required.” Id. at 1159. Rather, the court noted that proof of “uncharged facts or conduct” that have been established by a preponderance of the evidence “is sufficient to establish that the defendant committed a felony in order to preclude the reduction of the sentence under § 2Pl.l(b)(3).” Id. See also United States v. Strachan, 968 F.2d 1161, 1162-63 (11th Cir.1992) (noting that, because the sentencing guidelines do not define “committed,” it must be given its ordinary mean *281 ing, and holding that a district court can deny the reduction under § 2P1.1(b)(3) “if a preponderance of the evidence demonstrates that the defendant committed a disqualifying offense, even if there has been no formal conviction.”); United States v. Durham, 178 F.3d 796, 799 (6th Cir.1999) (assuming, without directly addressing the question, that § 2Pl.l(b)(3) requires neither a conviction nor an indictment in order to preclude application of the reduction).
While, in interpreting “committed” in the immigration statute, we do not have the same preponderance standard in place, the treatment of the word “committed” in the sentencing context is still instructive. It suggests that, if we give the word “committed” its plain meaning,[6] it describes facts or conduct. Perhaps those facts need not be established by a preponderance of evidence in all statutory contexts, but, at the time a person can be regarded as having “committed” a crime, there must be some evidence that the cñme has taken place. The majority equates the type of proof to “historical events.” (Maj. Op. 271). I agree. Yet, probable cause for an arrest does not constitute proof of historical events or the fact of commission.[7]
Even assuming it is appropriate to fashion federal common law here, I am still skeptical of the majority’s analysis. To begin with, the definition of “probable cause” itself casts doubt on the majority’s interpretation. Probable cause to arrest is present “when the facts and circumstances within the arresting officer’s knowledge [at the time of the arrest] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.” Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788, 789 (3d Cir.2000) (citation omitted) (internal quotation marks omitted). Probable cause to arrest establishes that an officer believes that an offense has been committed; it is not proof that that the offense has actually been committed. Importantly, the statute does not state that the determination is whether the LPR “may have” committed or even “probably” committed the offense. The required finding is that he did commit the offense. The existence of probable cause (assuming the warrant was so supported) is not proof that the crime was actually committed.[8]
In addition, it seems antithetical to the “general due process principles” cited by the majority itself that a determination of an alien’s or LPR’s status using a lowered burden of proof for commission occurs without any legal process whatsoever. As noted above, even the majority acknowledges the absence of process and counsel, and the significance of the restraints resulting from the determination. If the absence of the availability of process at the point of entry means anything at all, it means that more definitive proof — evidence as to commission, admis *282 sion, or conviction — is required for an immigration official to conclude that someone has “committed” a crime. The majority misunderstands what a heightened standard — one requiring, for example, conviction or admission — would mean in practice. It would not necessitate “a comparison,” presumably conducted by the immigration official at the point of entry, “of the government’s evidence against that proffered by the alien-defendant.” (Maj. Op. 272). To the contrary, the immigration official could only deem an LPR to be “seeking admission,” and thus subject to being paroled when he has some evidence that the LPR actually committed a listed offense.
Here, there were no statements by the petitioner, nor any facts known to the airport official that could be considered evidence that the petitioner had committed the crime charged. Surely, the mere presence of an arrest warrant is not enough.
III.
Ultimately, as noted above, I would reach the same result as the majority here — that Rodov cannot remain in the country unless he can prove his CAT claim — but I would reach this result on the basis that he is deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he was convicted of committing an aggravated felony. I disagree with the majority’s conclusion that he was an applicant for admission upon reentry to the U.S. who was later deemed inadmissible when he was convicted of a crime of moral turpitude, because probable cause to believe he committed a crime of moral turpitude does not provide sufficient proof of “commission” so as to fulfill 8 U.S.C. § 1101(a)(13)(C)(v) and strip him of his LPR status.

. The BIA failed entirely to grapple with this issue, concluding without analysis that, because Rodov later pled guilty to a fraud offense, he had "committed” that offense at the time he sought admission to the United States.

. See Maj. Op. 272 (acknowledging that an immigration officer's determination at the point of entry that an LPR has committed a crime of moral turpitude "revok[es] ... [that] person’s lawful-resident status,” and, thus, "entails restraints on the rights and privileges that he had previously enjoyed.”).

. As the majority points out, when an immigration officer determines an alien’s admissibility status at the point of entry, "[t]here is no hearing, and no neutral arbiter who can be entrusted to assess whether the available evidence is sufficient to satisfy a ‘preponderance’ or ‘clear and convincing’ standard.” (Maj. Op. 272).

. See Maj. Op. 272 ("With [general due process principles] in mind, we think the proper standard to employ here is probable cause to believe that the alien has committed one of the crimes identified in 8 U.S.C. § 1182(a)(2).”).

. In other cases where LPRs have been regarded as "seeking admission” and found inadmissible due to having committed crimes of moral turpitude, they had been convicted of a crime or did not challenge the "seeking admission" designation. See, e.g., Alaka v. Att’y Gen., 456 F.3d 88, 92 (3d Cir.2006) (at the time she reentered, petitioner had been convicted in the U.S. for aiding and abetting bank fraud); Nadal-Ginard v. Holder, 558 F.3d 61, 66 (1st Cir.2009) (at the time of attempted reentry, petitioner had been convicted of four counts of larceny); Singh v. U.S. Dep’t of Homeland Sec., 526 F.3d 72, 76 n. 5 (2d Cir.2008) (the court noted that Singh, who was found to be inadmissible for committing a crime of moral turpitude, "was convicted of his offense after he had applied for admission,” but, because he "does not rely on this fact as a possible ground for challenging the inadmissibility ruling ... any argument to that effect is waived, and we do not address it.”). But see Oduko v. Immigration & Naturalization Serv., 276 Fed.Appx. 21 (2d Cir. 2008). In Oduko, an unpublished opinion, the Second Circuit ruled that petitioner could properly be regarded as having “committed” a crime of moral turpitude when, at the time of his attempted reentry, he had been indicted, but not convicted, of criminal possession of stolen property. Id. at 23-24. The Second Circuit explained, briefly: "Here, the BIA’s interpretation of § 101(a)(13)(C) is reasonable as Congress selected the term 'committed' rather than the term 'convicted.' ... Because Oduko committed the offense involving moral turpitude prior to his attempted reen *280 try, he came under the exception in INA § 101(a)(13)(C) and was properly treated as an arriving alien.” Id. at 24 (internal citations omitted). However, this authority does not bind us and, even if it did, the circumstances are distinguishable because indictment for a crime requires a higher level of proof than the mere issuance of an arrest warrant.

. See United States v. Thomas, 315 F.3d 190, 196 (3d Cir.2002) (''[T]he 'plain meaning' is our starting point. We do not lightly disregard the statutory language.”) (citing Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

. See also Black’s Law Dictionary, Entry on "Commission” (9th ed.2009) (defining “commission” as "[t]he act of doing or perpetrating (as a crime).”).

.While the majority suggests that the Government should not have to develop evidence before paroling a person, (Maj. Op. 272), the statute requires the Government to make a determination, and that determination must have an adequate basis in fact. Surely they could ask him about the warrant or get copy of it and follow up with some investigation before imposing restraints on him.